## UNITED STATES DISTRICT COURT
## <u>FOR THE DISTRICT OF MARYLAND</u>

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **CASE NO:  ELH-18-098** |
| **FERNANDO CRISTANCHO,** | *Under Seal* |
| **Defendant.** | |

## <u>GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR SEVERANCE</u>

The United States submits its opposition to the Defendant's Motion to Sever Count One from Counts Two through Eleven (Doc. No. 72, 75).  The counts against the defendant are properly joined and the defendant has not met his burden to show that severe prejudice will result if severance is not granted.  For the reasons that follow, the motion should be denied.

## I.    BACKGROUND

### A.  Offense Conduct

In 1985,  Fernando Cristancho (hereinafter "the defendant"), was ordained as a priest and worked in Colombia, South America through 1994 when he took a position as an assistant priest in the Diocese of Alexandria, Virginia.  The defendant left the Diocese of Alexandria in 1997, and in 1999, moved to Maryland, where he began working as an assistant priest at St. Ignatius Catholic Church, in Harford County.  While working at St. Ignatius, parishioners and staff observed that the defendant was particularly fond of, and overly affectionate with, the young boys who were altar servers at the parish.  The affection included hugging and kissing the boys in public.  A member of the clergy admonished the defendant to cease his long hugs and other affectionate conduct towards small boys, but the defendant did not stop.

In or about 2000, the defendant agreed with ██████████, an acquaintance who was ██████████████, to conceive and raise children together.  The defendant and

2



████████ were not romantically involved. ████████████████████████

████████████████████████████████████████████████████████████

In 2001, ████████ gave birth to ████████████████████████ █

For approximately 8 months after the ████ were born, the defendant lived in the church most weeknights, and in a townhouse with ████████ ████████ most weekends.

By the summer of 2002, the Archdiocese of Baltimore revoked the defendant's faculties as a priest. ████████████████████████████ ████████ ████ ████████.  Although no longer able to officially act as a priest, the defendant continued to hold services at the homes of some of the parishioners, including the home of ████████ (pronounced "████",the grandmother of ████████.[2]  As detailed below, the defendant began molesting ████ then age 12, in ████ 2002.

**a.   Abuse of ████████████ (Minor Victim 1) (2002-2004):**

████ ████ attended mass daily, and often took ████ with her.  Not long after the defendant arrived at St. Ignatius in 1999, he began a friendship with ████ ████ and her grandson, ████ who was then 8 years old.  As ████ ████ grew close to the defendant, the defendant took ████ ████ and ████ to breakfast on a weekly basis. ████ became an altar server at the church, and was one of the young boys that the defendant was seen being overly affectionate towards.  After the defendant was no longer working at the church, he arranged with ████ ████ and ████ parents to hold religious services at ████ home, and arranged to have ████ perform as an altar server.  It was during this time that the defendant first abused ████  The defendant invited himself to attend a family camping trip for ████ 12th birthday in ████ 2002, and when he arrived, arranged to

---

[1] ████████ █ ████████████████████████████████████████████
████████████████████

[2] ████████ is identified in the Superseding Indictment as Minor Victim 1, and is the subject of Count One.

sleep alone in ███ tent.  Following the camping trip, the defendant arranged for ███ ███ and ███ to assist around the defendant's house, including with ████████  Eventually ███ would go to the defendant's house without his grandmother, driven there by either his mother or grandmother, the arrangements having been made by the defendant using phones and the internet.  Shortly after ███ began assisting ████████ at the defendant's house, the defendant arranged to have ███ spend the weekend.  It was during these weekends – of supposedly helping the defendant ████████ – that the defendant repeatedly sexually abused ███  The defendant sexually abused ███ from the fall of 2002 through early 2004.

The defendant engaged in classic "grooming" activity, such as showing ███ pornography including movies of sex acts between males and suggested they do the same sexual activities.  The defendant offered ███ alcohol, and would complain of a bad back and ask ███ for back rubs.  The defendant would take ███ to dinner and act as if they were in a romantic relationship, and told him that he loved him.  The defendant quickly arranged for ███ sleep in his bedroom, initially on the floor.  ███ was aware that the defendant locked the bedroom door while ███ was inside.  On one occasion, ███ awoke in the defendant's bed and observed the defendant lying next to him with his pants off, masturbating.  The abuse progressed.  The defendant touched ███ penis with his hands, and the defendant put his mouth on ███ penis on approximately 10 separate occasions.  The defendant also attempted to put his penis in ███ mouth.  On approximately 5-6 separate instances, the defendant anally penetrated ███ with his penis, and on two occasions the defendant coerced ███ to use his penis to penetrate the defendant's anus.

### b.  <u>The Defendant Married and Fathered Two More Children</u>

The defendant and ███ became involved in a protracted custody dispute over the

4



█████.[3]  During the heated custody proceedings, the defendant traveled to Colombia and met █████████, a Colombian national who was then approximately 23 years old.  █████████ who spoke no English and was of limited means, was then working as a live-in housekeeper for a friend of the defendant.  The defendant convinced Ms. █████ to marry him and come to the U.S.  Ms. █████ was pregnant with the defendant's daughter when she moved from Colombia to Maryland to live with the defendant.  Their daughter █████ was born in █████ 2011, and their son █████ was born in █████ 2012.[4]

### c.  Production of Child Pornography:  2011-2015

In September 2017, the defendant took his iPhone to a Walgreens in Harford County to print photos.  While working on the defendant's order, an employee observed numerous images of naked children and images of bite marks on a young boy's buttocks.  The employee contacted law enforcement.

A search warrant was executed at the defendant's home.  Law enforcement seized the iPhone and other digital items, including SD cards from inside the defendant's locked safe.  Pursuant to subsequent federal search warrants for the defendant's iPhone, the defendant's computer and other digital devices, and  the defendant's Google account, law enforcement located the following images referenced in the Indictment:

### i.  Count Two:  Minor Victim 4 (█████

The pornography charged in Count Two is a close-up image of █████ vagina, taken on January 18, 2012, when █████ was █████ old.  The image was part of a series of related photos



that was found on a SD card in the defendant's locked safe.

    ii.   Count Three:  Minor Victim 2 and Minor Victim 3 (███████████):

The pornography charged in Count Three is a series of images that include nude images of ███████████, produced ███████████ when they were 11 years old.  The images include the following:  the defendant kissing ████ on the lips, ████ naked with his legs spread wide apart, ████ naked with his hands on his inner thighs and his legs spread apart focused on his exposed genitals, a close up of ████ genitals while ████ is using his hands to pull away his underwear to expose his genitals, ████ wearing a tank top and underwear that are at her knees, standing with her arms out and legs spread, exposing her genitals.  These images were found on a SD card in the defendant's locked safe.

    iii.   Count Four:  Minor Victim 5 (██████

The pornography charged in Count Four are four images of ████ taken during a 30-second time frame ██████████ when ████ was 2 ½ years-old. The images were taken with the defendant's iPhone 5 and found on the defendant's iPhone 6s.  The first three images depict ████ standing on the kitchen table, nude, with his penis visible.  The fourth image is a close-up image of ████ penis, in the same place.

    iv.   Count Five:  Minor Victim 5 (██████

The pornography charged in Count Five is a series of five images of ████ produced on ██████████; ████ was 2 years, 9 months old.  Two of the images are of ████ naked, standing next to a mirror, and one that is a close-up image of his penis, with his hands holding his penis.  The images were located on the defendant's iPhone 6s and in his Google account.

    v.   Count Six:  Minor Victim 5 (██████

The pornography charged in Count Six is a series of four files of ████ produced on

███████████, when ██████ was 4 years, 10 months old.  The files are close up images (2) and videos (2) of ██████ exposed penis, while he is sitting on a toilet.  The video shows a hand reaching for the penis and then pinching it between two fingers, and a man's voice is heard during the video.  The four files were found on the defendant's iPhone 6s and created using an iPhone 6s.

### vi.   Count Seven:  Minor Victim 5 (██████

The pornography charged in Count Seven is a series of six files of ██████ produced on ███████████, when ██████ was 4 years, 10 months old. The files are close up images (3) and videos (3) of ██████ exposed penis, while he is sitting on the toilet, with feces in the bowl.  The files were found on the defendant's iPhone 6s and created on an iPhone 6s.[5]

## B.  The Indictment

As a result of the conduct described above, the defendant was charged in  the Superseding Indictment with one count of coercion and enticement of a minor to engage in illicit sexual conduct (Count One), six counts of production of child pornography (Counts Two through Seven), and four counts of possession of child pornography (Counts Eight through Eleven).  Below are the elements of the charges in the Superseding Indictment.

### a.   The elements of Count One (Coercion and Enticement):

i.   The defendant knowingly used a facility or means of interstate commerce to persuade, induce, entice or coerce an individual under the age of eighteen (18) to engage in sexual activity, or attempted to do so;

ii.   That the defendant believed that such individual was less than eighteen (18) years of age; and

iii.   That the defendant could have been charged with a criminal offense for engaging in the specified sexual activity.

---

[5] ██████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
████████████████████████████████████████████████████

      b.  <u>The elements of Counts Two through Seven (Production of Child Pornography)</u>

      i.  An actual minor, that is, a real person who was less than 18 years old, was depicted;

      ii.  That the defendant knowingly employed, used, persuaded, induced, enticed or coerced a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct; and

      iii.  The defendant had reason to know that the visual depiction would be transported in interstate commerce, said visual depiction was transported in interstate or foreign commerce, and the materials used to produce the visual depiction were transported in interstate commerce.

      c.  <u>The elements of Counts Eight through Eleven (Possession of Child Pornography):</u>

      i.  First, that the defendant knowingly transported (or shipped or distributed or received or sold or possessed with intent to sell or possessed a visual depiction;

      ii.  Second, that the visual depiction was transported in or affecting interstate or foreign commerce or the visual depiction was produced using materials that had been transported in or affecting interstate or foreign commerce;

      iii.  Third, that the production of the visual depiction involved the use of a minor engaging in sexually explicit conduct, and portrays that minor engaged in that conduct; and

      iv.  Fourth, that the defendant knew that the production of the visual depiction involved the use of a minor engaging in sexually explicit conduct, and portrayed a minor engaged in that conduct.

## II.    LEGAL ANALYSIS AND ARGUMENT

The defendant has moved to sever under Federal Rules of Criminal Procedure 8(a) and 14(a). The motion should be denied because the counts are of "similar character." Fed.R.Crim.P. 8(a). Even if the counts were not joined properly, the defendant's motion fails because he is unable to establish actual prejudice, meaning "substantial and injurious effect of influence in determining the jury's verdict." *United States v. Lane*, 474 U.S. 438, 449 (1986). The defendant has the burden of proving that joinder is "manifestly prejudicial," such that "defendant's right to a fair trial w[ill be] abridged." Fed.R.Crim.P. 14(a)

For the reasons that follow, the charges are properly joined and the motion should be denied.

**A.   Count One is Properly Joined with Counts Two Through Seven Under Rule 8(a)**

Federal Rule of Criminal Procedure 8(a) provides that two or more offenses may be charged in the same indictment if the offenses charged "are of the same or similar character or, are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan."  Based on established precedent, Rule 8(a) requires joinder here, not severance as the defendant asserts.

Rule 8(a) is construed broadly in favor of joinder "because the prospect of duplicating witness testimony, impaneling additional jurors, and wasting limited judicial resources suggests that related offenses should be tried in a single proceeding."  *United States v. Mir*, 525 F.3d 351, 357 (4th Cir. 2008).  The Fourth Circuit "has interpreted the latter two prongs of [Rule 8(a)] flexibly, requiring [only] that the joined offenses have a 'logical relationship to one another."  *United states v. Cardwell*, 433 F.3d 378, 385 (4ᵗʰ Cir. 2005) (noting that "Rule 8(a) permits very broad joinder because the efficiency in trying the defendant on related counts in the same trial.").  Put plainly, joinder of charges is the rule under 8(a), while severance is the exception.  *United States v. Hawkins*, 776 F.3d 200, 206 (4th Cir. 2009).

Interpreting this "same or similar character" language in the context of joint child molestation-child pornography prosecutions, courts across the nation have consistently held that offenses involving both offenses are of a similar character.  *See United States v. Reynolds*, 720 F.3d 665 (8th Cir. 2013) (joinder of enticement count with production count, involving different minors appropriate).  In *Reynolds*, the Eighth Circuit found that enticement of one minor to engage in illicit sexual activities, and production of child pornography of a different minor, "'are of the

same or similar character' because they show [the defendant's] predisposition to abnormal sexual attraction," and that "rules 8 and 14 are to be liberally construed in favor of joinder." *Id*. at 670.

In *United States v. Jass*, 331 Fed. Appx. 850, 854 (2d Cir. 2009), the 11th Circuit held that the counts of transporting minor to engage in illicit sexually activity and enticement of minors to engage in illicit sexual activity were properly joined with counts of possession of child pornography:  "Here, the sexual abuse counts and child pornography counts were clearly of a "similar character" in that all counts involved the sexual exploitation of children. *Citing United States v. Werner*, 620 F.2d 922, 926–27 (2d Cir.1980) (defining "similar [in] character" to include "resembling in many respects; somewhat alike; having a general likeness" (internal quotation marks omitted)).

The Court in *Jass* relied on *United States v. Hersh*, 297 F.3d 1233, 1242 (11th Cir. 2002), where the Second Circuit held that counts of traveling to engage with illicit sexual activity with a minor and enticement to engage in illicit sexual activity with a minor were properly joined with counts of receiving and possession child pornography:

> Collectively, the counts charge Hersh with child molestation and child pornography—which plainly represent acts of "similar character" involving the extraordinary mistreatment of children.  In fact, both Congress and the courts have acknowledged a link between these two offenses.  *See* Child Pornography Prevention Act of 1996, Pub. L. No. 104–208, § 121, 110 Stat. 3009, *3009–26–27 (1996) (finding a strong link between pedophilic behavior and child pornography)*; ... Quite simply, based on the similarity of the offenses, we conclude that Hersh's charged offenses were properly joined.

*United States v. Hersh*, 297 F.3d 1233, 1242 (11th Cir. 2002).

Numerous other courts have similarly held that counts relating to sexual exploitation of minors are similar in character and are properly joined.  *See United States v. Vavra*, 2020 U.S. Dist. LEXIS 70708 (W.D. TX. Apr. 22, 2020) (transportation of a minor across state lines with intent to engage in illicit sexual activity and possession of child pornography properly joined, with

anticipated testimony from multiple minor witnesses); *United States v. Lee*, No. 4:14-CR-0254, 2015 WL 12631238, at *1 (M.D. Pa. June 2, 2015); *see also United States v. Riccardi*, 258 F. Supp. 2d 1212, 1230 (D. Kan. 2003) (possession of child pornography and enticement are similar), *aff'd*, 405 F.3d 852 (10th Cir. 2005); *United States v. Rand*, No. 11-60088-CR, 2011 WL 4949695, at *2 (S.D. Fla. Oct. 19, 2011); (joinder of enticement, production, receipt and possession counts involving different victims separated by years appropriate). *But cf. United States v. Caraway*, No. 08-CR-117A (Sr), 2010 WL 275084, at *3 (W.D.N.Y. Jan. 20, 2010) (failure to register as a sex offender and possession of child pornography are not similar); *United States v. Williams*, No. 14-CR-109, 2015 WL 2095207, at *3 (E.D. Wisc. May 5, 2015) (failure to register and enticement are not similar).

In another case similar to the one here, the Second Circuit held that the joinder of enticement, interstate travel, and production of child pornography of three separate victims (as well as possession of child pornography) was proper because the offenses were similar. *United States v. Rivera*, 546 F.3d 245, 253 (2d Cir. 2008). The Second Circuit found that the offenses were "similar" under Rule 8(a), and further agreed with the Eleventh Circuit's *Hersh* decision, that "child molestation and child pornography ... plainly represent acts of 'similar character' involving the extraordinary mistreatment of children." *United States v. Rivera*, 546 F.3d 245, 254 (2d Cir. 2008).

The government has not found a single case were a court ruled that a count of enticement of one minor victim was improperly joined with production of child pornography of a different minor victim, or that any count of child molestation was improperly joined with any count involving the sexual exploitation of children (such as separate child molestation, production, distribution, receipt or possession of child pornography). Like the cases above, the similar counts

here are properly joined because each count involves the sexual exploitation of minors. Count One, charging coercion and enticement of Minor Victim 1, requires the defendant to persuade, induce, entice, or coerce a minor to engage in illicit sexual activity. This is most certainly a charge involving child molestation. Counts Two through Seven charge the sexual exploitation of Minor Victims 2 through 5 by using the minor to engage in sexually explicit conduct for the purpose of producing child pornography. This too, is unquestionably child molestation. Courts have held counts of child molestation to be similar to counts involving the mere possession of child pornography. Indeed, the counts that the defendant seeks to sever are not just "similar", but are of the "same" character in that all counts involve "the extraordinary mistreatment of children." Since the charges were properly joined, they should not be severed under Rule 8(a). The motion should be denied.

### B. Under Rule 14(a), the Defendant is Not Prejudiced by a Joint Trial

Even if two offenses are properly joined, a district court may nonetheless sever them under Rule 14 if joinder of the two offenses "appears to prejudice" either party."[6] As the Supreme Court has stated, joinder of offenses only violates the Constitution if "it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial." *Lane*, 474 U.S. at 446 n.8. Accordingly, "[w]here offenses are properly joined under Rule 8(a), severance of the offenses is

---

[6] Rule 14(a) provides:

> If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

Importantly, "Rule 14 does not require severance even when prejudice is shown; rather, it leaves the tailoring of relief to be granted, if any, to the district court's sound discretion." *Zafiro v. United States*, 506 U.S. 534, 538–39 (1993).

rare." *United States v. Hornsby*, 666 F.3d 296, 309 (4th Cir. 2012); *see also United States v. Blair*, 661 F.3d 755, 770 (4th Cir. 2011) (noting that demonstrate prejudice is a "daunting task"); *Cardwell*, 433 F.3d at 387 "a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would prevent the jury from making a reliable judgment about guilt or innocence.").

A district court "should grant severance under Rule 14 *only* if there is a serious risk that a joint trial would . . . prevent the jury from making a reliable judgment about guilt or innocence." *Id.* (*quoting Zafiro*, 506 U.S. at 539). Further, a defendant moving for severance under Rule 14 must make "a strong showing of prejudice." *United States v. Elshinaway*, No. ELH-16-0009, 2017 WL 867484, at *17 (D. Md. Mar. 6, 2017) (quoting *United States v. Goldman*, 750 F.2d 1221, 1225 (4th Cir. 1984)). As with Rule 8(a), the burden is on the defendant to establish such a degree of manifest prejudice that his trial will be rendered unfair.

The Fourth Circuit has identified three sources of prejudice that may justify the granting of a severance:

> 1) The jury may confuse and cumulate the evidence, and convict the defendant of one or both crimes when it would not convict him of either if they could keep the evidence properly segregated; 2) the defendant may be confounded in presenting defenses [such as when he desires] to assert his privilege against self-incrimination in one case but not in the other; or 3) the jury may conclude that the defendant is guilty of one crime and then find him guilty because of his criminal disposition.

*Elshinaway*, 2017 WL 867484, at *18 (citing *Goldman*, 750 F.2d at 1224). Additionally, "[i]n analyzing the prejudice component, it is important to consider whether, if there were a severance, evidence under one of the severed counts would in all probability be admissible at a trial on the other count." *Id.*

The defendant fails to meet his burden of showing that that his trial on coercion and enticement charges together with child pornography and exploitation charges will be manifestly

prejudicial, thereby denying him a fair trial.  Under Federal Rules of Evidence 414 and 404(b), a significant amount of evidence pertaining to Count One would be admissible in any trial of Counts Two through Seven, as well as the counts charging possession of child pornography.  Notably, the defendant fails to address government's Motion to Admit Evidence Pursuant to Rule 414 & 404(B) (Doc. 24), or even *mention* Federal Rule 414.  As set forth in the government's motion, Rule 414 specifically permits the government to introduce evidence related to the defendant's prior child molestation conduct in a case where the defendant is accused of child molestation.  The evidence of the defendant's sexual molestation of Minor Victim 1 (███ in 2002 through 2004 is admissible evidence, pursuant to FRE 414, in a trial against the defendant for producing images of child pornography in 2011 through 2014.   Likewise, the evidence of defendant's production of child pornography in 2011 through 2014, is admissible evidence against the defendant, pursuant to FRE 414, in a trial for his coercion and enticement of ███ in 2002 through 2004.[7]

The evidence of defendant's sexual molestation admissible pursuant to Rule 414, is also admissible under Rule 404(b) to show the defendant's modus operandi, intent, motive, planning, absence of mistake and identity.

By way of example, consider the defendant's statements to investigators – in which he admitted to taking some, but not all, of the depictions in question.  The defendant is likely to argue that the visual depictions are not "sexually explicit conduct" because they were not intended to "excite lustfulness or sexual stimulation in the viewer," as the jury will be instructed is required to

---

[7]  The Fourth Circuit has stated,

> This rule is an exception to the general rule that evidence of past crimes may not be used "to prove the character of a person in order to show action in conformity therewith." See Rule 404(b), Fed. R. Evid.  Unlike Rule 404(b), Rule 414 allows the admission of evidence for the purpose of establishing propensity to commit other sexual offenses.

*United States v. Kelly*, 510 F.3d 433, 436-37 (4th Cir. 2007).

prove him guilty of Counts Two through Seven.  In addition to being specifically allowed under Rule 414, the evidence of the defendant's conduct towards ▮▮▮ (Minor Victim 1 in Count One), including his sexual abuse, grooming behavior toward ▮▮▮ his sexual molestation of ▮▮▮ his acts of sleeping alone with ▮▮▮ in the defendant's locked bedroom – are highly relevant and probative under 404(b) to prove the depictions in Counts Two through Seven were taken to "excite lustfulness or sexual stimulation in the [defendant]".  It is unmistakable that the defendant's sexual abuse of Minor Victim 1 is evidence that the defendant is sexually attracted to minor boys, that he had the motive to produce the sexually explicit images in Counts Two through Seven, and that he intended them for his own sexual stimulation.[8]  Moreover, the defendant may also claim that he did not produce or aid and abet the production of all or some of the images, or that they were taken as part of other photographs, by mistake.  The defendant's sexual abuse of Minor Victim 1 is clearly relevant to the identity of the defendant and the person responsible for the sexually explicit depictions in Counts Two through Seven, and that he did not take them by mistake or accident.

Similarly, relating to Count One, the defendant is likely to argue that he did *not* engage in sex acts with Minor Victim 1, who had just turned 12 years old.  The substantial evidence – including witness testimony, digital evidence, search warrant executions, and the defendant's statement – to establish that the defendant took numerous images of child pornography of Minor Victims 2 through 5 would be relevant and highly probative to Count One, and would also be admissible under 414 and 404(b).  The defendant's production of close-up images of the genitals of a baby, a toddler, and two 11-year-olds is highly probative of his motive and intent to sexually abuse Minor Victim 1, a minor.  Additionally, the defendant's conspicuous affection towards

---

[8] The Fourth Circuit has held that prior sexual abuse "is highly probative because it tends to prove a "sexual attraction towards children." *United States v. Rice*, 347 F. App'x 904, 906 (4th Cir. 2009); *United States v. Kelly*, 510 F.3d 433, 438 (4th Cir. 2007).

young boys, even after being counseled to avoid the behavior, is equally relevant and admissible for Count One as well as the production of child pornography counts (Counts Two through Seven).

Moreover, to the extent that any individual portions of evidence are not mutually admissible, any prejudice resulting from a single trial can be cured by means less restrictive than severance. *United States v. Elshinawy*, No. CR ELH-16-0009, 2017 WL 876484, at *19 (D. Md. Mar. 6, 2017); *see Zafiro*, 506 U.S. at 539 (recognizing "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice" permit denial of severance). As this Court noted in *Elshinawy*, "[a] district court may instruct a jury that a separate crime or offense is charged in each count of the indictment and each must be considered separately." As the court recognized in *Cardwell*, 433 F.3d at 388, such a jury charge "neutralized the possibility that the jury would hold the defendant's felony status against him when considering his guilt on other charges." *Id*. Upon request of the parties, the Court will issue *Sand*, Modern Federal Jury Instructions, 3-6 (separate consideration of multiple counts—single defendant), and the jury is presumed to follow the instruction that the verdict on any one count should not control the verdict on any other count. Moreover, "[c]omplete, mutual admissibility is not a requirement for valid joinder." *United States v. Jamar*, 561 F.2d 1103, 1108 n.8 (4th Cir. 1977).

Additionally, the defendant may not simply allege, but must make an actual showing that the joinder will "confound" his defenses. There is no showing here. Rather, the defendant has merely stated that he "*may* present separate defenses on various charges, and a joint trial could 'embarrass or confound' him in the presentation of those defenses," with no further explanation. Doc. 72-1, at 4 (emphasis added).

The defendant's reliance on *United States v. Foutz*, 540 F.2d 733, 736-38 (4th Cir. 1976) as support for his argument that the jury will convict the defendant based on criminal disposition

is misplaced.  In *Foutz*, the Fourth Circuit held that evidence showing the defendant had perpetrated robberies three months apart would not have been admitted to prove his identity had he been tried separately for those offense.  Consequently, the court found the defendant "was sufficiently prejudiced by the district court's denial of the defendant's motion for severance." *Foutz*, 540 F.2d at 738.  In the forty years since *Foutz* was decided, it has been factually distinguished multiple times.  See *United States v. Isom*, 138 F. App'x 574, 581 (4th Cir. 2005) (robberies 11 days apart); *United States v. Jones*, 104 F.3d 360 (4th Cir. 1996).  Here, there is clearly sufficient factual support linking the defendant to each charge in the Superseding Indictment, although he still may argue he did not take the photos in question.  More importantly, *Foutz* did not involve Rule 414 which specifically admits propensity evidence:  "evidence that the defendant committed any other child molestation ... may be considered on any matter to which it is relevant."  Thus, the "criminal disposition" prong cited in *Goldman* is not relevant in considering Rule 14(a) in a case of child molestation.  *See also United States v. Reynolds*, 720 F.3d 665, 670 (8th Cir. 2013) (upholding the district court's refusal to sever and finding that numerous child sexual exploitation charges against a defendant that involved separate victims and incidents were "of the same or similar character because they show [the defendant's] *predisposition* to abnormal sexual attraction and tend to rebut the claim that [the defendant] was trapped into receiving child pornography.") (emphasis added).

Next, the defendant argues that prejudice may result from the cumulative weight of evidence, citing *United States v. Halper*, 590 F.2d 422, 430 (2d Cir. 1978).  In *Halper*, the Second Circuit held that the charges of Medicaid Fraud and income tax evasion were not properly joined. *Halper*, 590 F.2d at 432-33.  However, as the Fourth Circuit has held many times since, prejudice from cumulative weight of the evidence or possible jury confusion can be managed with

appropriate jury instructions, including limiting instructions, and specially tailored verdict forms. *Duke v. Uniroyal*, 928 F.2d 1413 (4th Cir. 1990) (holding that no prejudice resulted to defendants in allowing joinder of cases because the trial court had provided a verdict form that called for a separate finding with respect to each plaintiff, and had instructed the jury to consider each plaintiff's claims, and the evidence given in support of those claims, separately). With proper instructions both during the course of trial and at the end, the jury can be expected to manage the evidence introduced.

Last, the defendant cites *Lane*, *supra* at 474, for support that the government may gain an "unfair advantage" at the "expense of unfair prejudice to [the defendant]" if the jury hears evidence pertaining to all offenses charged in the Superseding Indictment. Doc. 72-1, at 5. However, the portion of the case he cited was not from the majority opinion, but from the concurring and dissenting opinion, and therefore not binding. Moreover, as demonstrated above, the mutual admissibility of significant evidence combined with this Court's instructions to the jury establishes that there will be no unfair prejudice to the defendant.

The defendant has simply failed to show that his defenses would be prejudiced at a joint trial. The cases addressing discretionary severance on the basis of prejudice to the defense most typically reference a defendant's desire to testify as to one or more counts, but refrain from testifying relating to other counts. Here, the defendant has not even hinted that he is planning on testifying at all, let alone "that he has both important testimony to give concerning one count and a strong need to refrain from testifying on the other." *Goldman*, 750 F.2d at 1225; see also *United States v. Martin*, 18 F.3d 1515, 1519 (10th Cir.), cert. denied, --- U.S. ---, 63 U.S.L.W. 3232, 63 U.S.L.W. 3262 (U.S. Oct. 3, 1994) (No. 94-41); *United States v. Smith*, 919 F.2d 67 (8th Cir.1990). As the Fourth Circuit held in *United States v. Jones*, 104 F.3d 360 at 2 (4th Cir. 1996)

(unpublished), "[s]imply stating that there may be a conflict is not sufficient." *Id.*

### C. Courts Regularly Approve Joinder in Child Exploitation Cases as Non-Prejudicial

Like the Rule 8(a) precedent cited above, all of the cases found by the government that considered discretionary joinder under Rule 14(a) found no prejudicial joinder.

In *Rivera*, the defendant argued that jury would be "profoundly influenced … by the cumulative effect of evidence relating to distinct offenses in its assessment of whether the government had met its burden of proof on any one charge." 546 F.3d at 254.  The Second Circuit, however, found the defendant's "generalized claim of prejudice" insufficient, and pointed to the district court's instruction to the jury to consider each count separately, and that its verdict must be unanimous as to each charge.  *Id.*  The court also pointed to Rule 414, which "specifically sanction[ed] the kind of showing that [the defendant] says is impermissible and conducive to spillover." *Id.*

In *United States v. Riccardi*, the court found that the introduction of evidence as to possession of child pornography and evidence as to coercion and enticement "w[ere] not so complex or intertwined that it would confuse the jury or encourage members to cumulate the evidence." 258 F. Supp. 2d at 1231.

Additionally, in *Hersh*, the Eleventh Circuit ruled that the fact that the offenses involve child molestation or child pornography, does not create a risk of spillover prejudice:

> We are not persuaded by either claim. As an initial matter, a reasonable jury undoubtedly would have found both the evidence of Hersh's child molestation and the evidence of Hersh's child pornography very inflammatory, and Hersh has offered no support for the contention that the evidence of child pornography was somehow more prejudicial or inflammatory than the charge that he repeatedly molested young, poverty-stricken boys from Third World countries.  Nor has he offered support for the contention that the computer evidence related to the child pornography count actually confused the jury.  Hersh merely proffers that the stigma of the child pornography charges must have impacted the jury's verdict on

> the remaining counts since the jury convicted Hersh on all counts after only five hours of deliberations following five weeks of trial.  Yet, this fact is insufficient to mandate the conclusion that prejudice or jury confusion resulted.  *See Walser*, 3 F.3d at 386 ("To justify reversal 'more than some prejudice must be shown; the appellant must demonstrate that he received an unfair trial and suffered compelling prejudice.' 'This is a heavy burden, and one which mere conclusory allegations cannot carry.' ") (citations omitted).

*United States v. Hersh*, 297 F.3d 1233, 1243 (11th Cir. 2002).  *See also United States v. Blake*, 868 F.3d 960 (11th Cir. 2017) ("sex trafficking by coercion is an abhorrent crime, but so is child sex trafficking.  And there is no compelling prejudice where both sets of charges are inflammatory.").

The defendant's claim that the charges in Count One (involving illicit sex acts with a minor) are not even "similar" to Counts Two through Seven (involving the sexual exploitation of minors) fails on its face, and has been rejected by every court that has considered this dubious assertion.  The counts in the Superseding Indictment are properly joined.  Further, the defendant offers no authority or evidence for the conclusory arguments that a joint trial will "embarrass or confound" the defense, that the jury would "infer a criminal disposition" on the defendant; or that the evidence would improperly "cumulate" in the jurors' minds.  Additionally, there is no reason to believe that proper jury instructions cannot prevent/cure any potential unfair prejudice to the defendant that arises in a single trial.  Accordingly, the defendant has failed to establish the existence of prejudice and, therefore, he is not entitled to severance.

### D. <u>The Time Between the Defendant's Sexual Molestation of Minor Victim 1 and the Sexual Exploitation of Minor Victims 2, 3, 4, & 5 Does Not Require Severance</u>

The defendant also argues that conduct charged in Count One and Counts Two through Seven are too far apart in time to be tried together.  Doc. 72-1 at 2, 3, 5.  Yet the defendant cites to no case that found prejudicial joinder based on the temporal proximity of the joined counts.  Many of the cases listed above involved different victims, different charges, and counts that

occurred years apart.  *See also United States v. Thunder*, No. CR 11-30113-RAL, 2012 WL 5833557, at *2 (D.S.D. Nov. 16, 2012) (joinder appropriate of counts charging sexual abuse of different minors three years apart, where the offenses were of the "same or similar" character.). All were properly joined because like in this case, the counts were of the same or similar character, and much of the evidence was mutually admissible.

In a recent case with similar facts to the instant case, in *United States v. Woody*, 469 F. Supp. 3d 1163 (D.N.M. 2020), the District Court ruled that joinder of counts of aggravated sexual abuse of one victim from 1999 with counts of aggravated sexual abuse of a different victim *fifteen years* later in 2016 was appropriate under Rules 8(a) and 14(a).  *Id*. at 1173-74.  The Court noted that the defendant's prior sexual abuse was admissible under rules 413 and 414, noting that the "Rule 414(a) testimony ... certainly indicates that Defendant has a propensity to sexually abuse young girls."), and (ii) corroborates [both victims' accusations]."  *Id*.  As described above, the evidence of the defendant's exploitation of each victim in the Superseding Indictment is relevant to establish that the defendant is sexually attracted to young boys and that he has the motive and propensity to sexually exploit and abuse young boys.[9]  Additionally, as in *Woody*, the evidence of the defendant's exploitation in Counts Two through Seven corroborates Minor Victim 1's accusations that he was sexually molested by the defendant.

The evidence of each count is mutually admissible under 414 and 404(b), thus joinder is appropriate.

---

[9]  The fact that these prior incidents took place a number of years apart also does not bar their admission under Rule 414. The Fourth Circuit has previously admitted evidence of prior incidents that occurred anywhere from ten to twenty years prior to the charged offense.  *See United States v. Rice*, 347 Fed. Appx. 904, 905 (4th Cir. 2009) (unpublished).  Likewise, in *United States v. Kelly,* the Fourth Circuit found that a 22 year old conviction for attempted rape of a 12 year-old was admissible under Rule 414 in a prosecution for traveling in interstate commerce for the purpose of engaging in illicit sexual conduct with a 12 year-old.

## **CONCLUSION**

For the reasons stated above, namely because Counts One and Two through Seven of the Superseding Indictment are properly joined under Rule 8, and because the defendant has failed to meet his burden of proving that the joint trial will be manifestly prejudicial under Rule 14, the government respectfully requests that the Court deny the defendant's motion to sever Count One from the remaining counts in the Superseding Indictment.

Respectfully submitted,

Jonathan F. Lenzner
Acting United States Attorney

By: _____

Paul E. Budlow
Assistant United States Attorney