**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **CASE NO:  ELH-18-098** |
| **FERNANDO CRISTANCHO,** | |
| **Defendant.** | |

**GOVERNMENT'S ADDENDUM TO MOTION TO ADMIT EVIDENCE**
**PURSUANT TO RULES 414, 404(b), & 401,**
**AND AS INTRINSIC TO THE CHARGED COUNTS**

The United States hereby files a motion for a pretrial ruling regarding the admission of evidence at trial pursuant to Rules 414, 404(b), & 401 of the Federal Rules of Evidence.  This motion supplements the government's filing in Document 24, and provides notice of additional evidence that the government intends to introduce at trial.[1]  The admission  should all be admitted because it is relevant, intrinsic to the charged offenses, and its admission will not unduly prejudice the defendant. It follows that all the evidence is admissible under Federal Rules of Evidence 401, 404(b), and/or 414 .

I.      **FACTUAL BACKGROUND**

The following will provide a detailed recitation of the facts that the United States will seek to present to the jury, in order to provide the context under which the United States intends to introduce this evidence.

---

[1]  The government previously identified to the defendant much of the evidence it is seeking to admit pursuant to 404(b) and 414, and provided copies of the relevant records in discovery.  To the extent that this filing addresses additional evidence, the government has previously provided the relevant records in discovery, and this motion should be treated as notice of the government's intent to admit such evidence.

2

A.    **Timeline Overview**[2]

| Date | Event |
|------|-------|
| 1956 | Cristancho was born in Colombia, South America |
| 1985 | Cristancho was ordained as a priest in Colombia, South America |
| 1995-1997 | Cristancho was employed as a priest in the U.S. through the Diocese of Arlington, VA |
| 1999 | Cristancho was employed as an Associate Pastor at St. Ignatius Church, Hickory, Harford County |
| 1999-2002 | Cristancho was observed being overly affectionate to minors at the church, admonished, and continued the behavior. |
| 1999-2001 | Cristancho groomed and attempted to sexually abuse ███████████ (age 13-15y) |
| 2001 | ███████████ agreed to ███████████ bear the defendant's children. ███████ and the defendant traveled to Colombia, South America. |
| November 2001 | ███████████ gave birth to the defendant's ███████████ who resided together in a townhouse ███████. |
| July 2002 | Cristancho was removed from his position at St. Ignatius Church, and his priestly faculties were revoked. |
| 2002-2004 | Cristancho abused ███████ age 12-13 (Count One) |
| August 2002 | Cristancho continued to preside over Catholic Mass at the homes of parishioners. |
| Fall 2003 | Cristancho and ███████ separated. |
| 2011 | While is Colombia, Cristancho met ███████, who was working in the home of Cristancho's friend. ███████ agreed to marry Cristancho and traveled to the United States. |
| 2011 | ███████ gave birth to ███████ |
| 2011-2017 | Cristancho searched for and visited websites focused on "boys" engaging in sex with other boys and boys masturbating, as well as "teen boys" doing the same. |
| January 2012 | Cristancho produced a close-up image of ███████ (age 5m) vagina (Count 2) |
| October 2012 | ███████ gave birth to ███████ |
| December 2012 | Cristancho produced images of ███████ (age 11y) genitals (Count 3) |

---

[2] This timeline is also attached to this filing as Exhibit 1, for ease of use.

| Date | Event |
|------|-------|
| March 2015 | Cristancho produced close up images of ██████ (age 2y 6m ) penis (Count 4) |
| July 2015 | Cristancho produced close up images of ██████ (age 2y 9m) penis (Count 5) |
| August 2017 | Cristancho produced close up images of ██████ (age 4y 10 m) penis (Count 6) |
| August 2017 | Cristancho produced close up images of ██████ penis (Count 7) |
| September 2017 | Cristancho took his iPhone to a Walgreens in Abingdon to print photographs, and an employee contacted the police after observing several images of naked children among the images on the iPhone. |
| September 2017 | Search and Seizure Warrant executed by law enforcement at the defendant's residence. |

## B.     Factual Background

In 1985,  Fernando Cristancho ("the defendant") was ordained as a priest and worked in Colombia, South America through 1994 when he took a position as an assistant priest in the Diocese of Alexandria, Virginia.  The defendant left the Diocese of Alexandria in 1997, and in 1999, moved to Maryland, where he began working as a priest ("Associate Pastor") at St. Ignatius Catholic Church, in Harford County.  At that time, the defendant began having access to young children whose families were parishioners of the church, as well as the children who were selected as altar servers.

While working at St. Ignatius, parishioners and staff, including Monsignor ██████████, observed that the defendant was particularly fond of, and overly affectionate with, the young boys who were altar servers at the parish.  The affection included hugging and kissing the boys in public. Msgr. Barker admonished the defendant to cease his long hugs and other affectionate conduct towards small boys, but the defendant did not stop.

In or about 2000, the defendant convinced ████████████, an acquaintance ██████████ ██████████████████, to conceive and raise children together.  The defendant and ██████

4

were not romantically involved. ███████████████████████████████████

███████████████████████████████████████████████████████████████████

███████ gave birth ███████████████████████████████████

For approximately 8 months after ████████ were born, the defendant lived in the church most weeknights, and in a townhouse with ████████████████ most weekends.

By the summer of 2002, the Archdiocese of Baltimore revoked the defendant's faculties as a priest.  The defendant began to live full time in the house with ████████████████  Although no longer able to officially act as a priest, the defendant continued to hold services at the homes of some of the parishioners, including the home of █████████████████████ the grandmother of ██████████████.[4]  As detailed below, the defendant began molesting █████ then age twelve, in August 2002.

   i.  **The defendant's sexual abuse of** ████████████ **(2002-2004) (Count 1)**

Ms. ███████ attended mass daily, and often took █████ with her.  Not long after the defendant arrived at St. Ignatius in 1999, he began a friendship with Ms. ██████ and her grandson, █████ who was 8 years old.  As Ms. ██████ grew close to the defendant, the defendant met Ms. ████████ and ██████ for breakfast on a weekly basis.  ████████ became an altar server at the church, and was one of the young boys that the defendant was seen being overly affectionate towards.

After the defendant was no longer working at the church, he arranged with ███████████ and ██████ parents to hold religious services at ███████ home, and arranged to have ██████ perform as an altar server.  It was during this time that the defendant first abused ██████  The defendant invited

---

[3] ██████████████████ are identified in the Second Superseding Indictment as Minor Victim 2 and Minor Victim 3, respectively, and are the subjects of Count Three.

[4] ████████████ is identified in the Second Superseding Indictment as Minor Victim 1, and is the subject of Count One.

himself to attend a family camping trip for ███ 12th birthday in August 2002, and when he arrived, arranged to sleep alone in ███ tent.  While alone in the tent with ███ the defendant asked ███ to place his (███ legs between the defendant's.  The defendant explained to ███ that he usually slept with a pillow to alleviate back pain, but since there was no extra pillow, he wanted to use ███ leg instead.  The defendant was "pushy" and "a manipulator," so ███ did what he asked.  Following the camping trip, the defendant arranged for Ms. ███ and ███ to assist around the defendant's house, including with the triplets (███████████████████ ███ ███████████).  Eventually ███ would go to the defendant's house without his grandmother, driven there by either his mother or grandmother, the arrangements having been made by the defendant using phones and the internet.  Shortly after ███ began assisting with the triplets at the defendant's house, the defendant arranged to have ███ spend the weekend.  It was during these weekends – of supposedly helping the defendant with his infant triplets – that the defendant repeatedly sexually abused ███  The defendant sexually abused ███ from the fall of 2002 through early 2004.

The defendant engaged in classic "grooming" activity, such as showing ███ pornography including movies of sex acts between males and suggested they do the same sexual activities.  The defendant offered ███ alcohol, and would complain of a bad back and ask ███ for back rubs.  The defendant would take ███ to dinner, kiss ███ and act as if they were in a romantic relationship, and told him that he loved him.  The defendant quickly arranged for ███ to sleep in his bedroom, initially on the floor.  ███ was aware that the defendant locked the bedroom door while ███ was inside.  On one occasion, ███ awoke in the defendant's bed and observed the defendant lying next to him with his pants off, masturbating.  The abuse progressed.  The defendant touched ███ penis with his hands, and the defendant put his mouth on ███ penis on

approximately 10 separate occasions.  The defendant also attempted to put his penis in ████ mouth.  On approximately 5-6 separate instances, the defendant anally penetrated ████ with his penis, and on two occasions the defendant coerced ████ to use his penis to penetrate the defendant's anus.

### ii.     The defendant married and fathered 2 more children (both victims)

The defendant and ████████ became involved in a protracted custody dispute over the triplets.[5]  During the heated custody proceedings, the defendant traveled to Colombia and met ████████████, a Colombian national who was then approximately 23 years old.  Ms. ████████ who spoke no English and was of limited means, was then working as a live-in housekeeper for a friend of the defendant.  The defendant convinced Ms. ████████ to marry him and come to the U.S. Ms. ████████ was pregnant with the defendant's daughter when she moved from South America to Maryland to live with the defendant.  ████████████ ██████ ████████████ ████████████████ ████ ██████████████████████

### iii.    Counts 2 through 11, Production and Possession of  Child Pornography (2011-2015)

In September 2017, the defendant took his iPhone to a Walgreens in Harford County to print photos.  While working on the defendant's order, ████████████████, a Walgreens

---

[5]  Around this time, in approximately November 2005, when ████████████ age 4, ████████ disclosed that the defendant "puts his penis in my mouth," and that he saw the defendant do the same to ████████ ██████ disclosed that the defendant touched his penis "to make it grow." Although the Department of Social Services ("DSS") "indicated" child sexual abuse of ████████████ and ██████ no criminal charges were brought at the time.  The government does not intend to introduce, in its case-in-chief, evidence of these allegations, or the fact that there was an investigation by DSS.

[6]  ██████ is identified in the Second Superseding Indictment as Minor Victim 4 and is the subject of Count Two.  ██████ is identified in the Second Superseding Indictment as Minor Victim 5 and is the subject of Counts Four through Seven.

employee, observed numerous images of naked children and images of bite marks on a young boy's buttocks.  Ms. ███████ contacted law enforcement.

A search warrant was executed at the defendant's home.  Investigators seized the iPhone and other digital items, including SD cards from inside the defendant's locked safe.  Pursuant to subsequent federal search warrants for the defendant's iPhone, the defendant's computer and other digital devices, as well as the defendant's Google account, investigators located the following files referenced in the Indictment:

          a.        <u>Count Two:  Minor Victim 4 (</u>███████

The pornography charged in Count Two is a close-up image of ███████ vagina, taken on January 18, 2012, when ███████ was 5 months old.  The image was part of a series of related photos that was found on a SD card in the defendant's locked safe.

          b.        <u>Count Three:  Minor Victim 2 and Minor Victim 3 (</u>███████
███████:

    The pornography charged in Count Three is a series of images that include nude images of ███████ produced on December 27, 2012, when they were 11 years old.  The images include the following:  the defendant kissing ███████ on the lips, ███████ naked with his legs spread wide apart, ███████ naked with his hands on his inner thighs and his legs spread apart focused on his exposed genitals, a close up of ███████ genitals while ███████ is using his hands to pull away his underwear to expose his genitals, ███████ wearing a tank top and underwear that are at her knees, standing with her arms out and legs spread, exposing her genitals.  These images were found on a SD card in the defendant's locked safe.

          c.        <u>Count Four:  Minor Victim 5 (</u>███████

The pornography charged in Count Four are four images of ███████ taken during a 30-second time frame on March 10, 2015, when ███████ was 2 ½ years-old. The images were taken with the

defendant's iPhone 5 and found on the defendant's iPhone 6s.  The first three images depict ████ standing on the kitchen table, nude, with his penis visible.  The fourth image is a close-up image of ████ penis, in the same place.

        d.    <u>Count Five:  Minor Victim 5 (████</u>

The pornography charged in Count Five is a series of five images of ████ produced on July 4, 2015, when ████ was 2 years, 9 months old.  Two of the images are of ████ naked, standing next to a mirror, and one that is a close-up image of his penis, with his hands holding his penis.  The images were located on the defendant's iPhone 6s and in his Google account.

        e.    <u>Count Six:  Minor Victim 5 (████</u>

The pornography charged in Count Six is a series of four files of ████ produced on August 3, 2017, when ████ was 4 years, 10 months old.  The files are close up images (2) and videos (2) of ████ exposed penis, while he is sitting on a toilet.  The video shows a hand reaching for the penis and then pinching it between two fingers, and a man's voice is heard during the video.  The four files were found on the defendant's iPhone 6s and created using an iPhone 6s.

        f.    <u>Count Seven:  Minor Victim 5 (████</u>

The pornography charged in Count Seven is a series of six files of ████ produced on August 6, 2017, when ████ was 4 years, 10 months old. The files are close up images (3) and videos (3) of ████ exposed penis, while he is sitting on the toilet, with feces in the bowl.  The files were found on the defendant's iPhone 6s and created on an iPhone 6s.[7]

        g.    <u>The defendant's statement to investigators:</u>

---

[7]  After the search warrant was executed at the defendant's residence, it was learned that the defendant slept alone with his ████ age 4, in a locked bedroom.  ████ was forensically interviewed at the Harford County Child Advocacy Center, where he disclosed that the defendant put his mouth on ████ penis.  The government does not intend to introduce, in its case-in-chief, evidence of these allegations, or the fact that there was an investigation by DSS.

While investigators were executing the search warrant, the defendant returned home and agreed to be interviewed by Trooper Adam LeCompte of the Maryland State Police as well as Det. Joe Dugan of the Harford County Sheriff's Office.  During the statement, the defendant attempted to explain the presence of child pornography on his iPhone, his Google account, and SD cards by claiming that (1) ▮▮▮ took some of the photos; (2) the defendant took some of the photos, but they were not sexual in nature; (3) the photos were taken because they were familial, because the defendant is Hispanic, and because ▮▮▮ is uncircumcised.  The defendant also stated that the photos were taken "in the moment," at a time when he was playing a game ▮▮▮ ▮▮▮ Based on these statements, the government anticipates the defense that these images were not taken by the defendant and that in any event they are not sexual in nature.

Some of the defendant's statements are detailed here:

➢ The defendant admitted that his phone contained naked photos of ▮▮▮ but indicated that ▮▮▮ took the photos:

   o "Yeah they are photos.  Uh, even, let's see.  I took some pictures of uh, my children, uh, taking baths, uh, pee-peeing, like that.  Some of the pictures were taken by ▮▮▮ (Interview 1, @ 4:55);

   o "I have several pictures of when he ▮▮▮ was pooping and he was just uh, taking the camera like this and then, see what I'm saying, it's backwards" (Interview 1 @ 5:42);

➢ The defendant claimed that the images were not sexual and were common family photos:

   o "I'm gonna go ahead and say, uh, some of the pictures that are, uh, naked, but it is not like, like uh try to, try uh, abuse, sexually abuse the child or things like that.... It's like a family… See what I'm saying?.... I think many people have pictures of children naked" (Interview 1 @ 6:07);

➢ The defendant appeared to admit to taking some of the photos, and indicated that it related to his Hispanic heritage and ▮▮▮ penis being uncircumcised, and again stated that there was nothing sexual about the images:

   o "And then you bring him and say okay ▮▮▮ get naked.  You're gonna take a shower.  In the morning, or when he wakes up.  You would be stunned.  You would

10

be amazed about how he does it.  He gets up to where his belongings are, clothing and stuff like that… select always the best, the best shape, the best tones.  The combination of… he's 4 years of age.  We are Hispanic people.  We don't… get uh, circumcision.  Our foreskin's there.  And it itches when you do not clean it very well.  About 4 months ago, he's [████] on his own.  I said, after now, I accompany you [in the bath/shower]" (Interview 1 @ 12:36);

- o "It is not that it is my pleasure seeing him naked.  I think uh, I would rather be with a woman or if I am homosexual, will look for a man, not a child, a male child." (Interview 1 @ 13:14);

➢ The defendant denied viewing any type of pornography on his phone, and when asked a second time, offered that his [████████████] friends, used his phone to search "the biggest dick ever." (Interview 1 @ 20:40)

➢ When asked about photos of [████] penis on his phone (Count Four), the defendant first said, "he [████] took some pictures like that."  When Det. LeCompte explained that [████] could could not have taken the picture in question, and again asked the defendant why the picture was on his phone, the defendant responded, "I don't, I don't remember."  When asked why he took another naked photo of [████] that investigators located on his computer, the defendant said simply, "I don't know."  (Interview 1 @ 41:10)

➢ Later in the interview, the defendant was asked about the photo in his Google photos application on his phone that depicted a close-up image of [████] holding his penis with both hands (Count Five).  The defendant again responded, "I don't remember that." (Interview 2 @ 3:07);

➢ The defendant was also asked about the naked pictures of [████████] found on the SD card stored in his safe.  The defendant responded, "I don't remember that."  The defendant was asked why the SD card was in the safe, and he said, "I don't know." Interview 2 @ 3:35)

➢ When asked why he took the photo of [████] penis, other than for pleasure, and he said, "I don't know." (Interview 2 @ 8:00);

➢ "I do not, I do not send it to anybody.  I don't, I don't collect that just for the pleasure to visit and revisit and look what is that and then causing me pleasure or whatever.  Uh, um, I get an erected masturbating myself, things like that.  It's the moment.  It's the moment.  And then I don't visit that."  (Interview 2 @ 10:43).

➢ "I think if there is a sick person that take pictures like that and visit them and then go on and on and on and on and even (inaudible) and export them or whatever then there would be a concern.  But this is family.  We don't uh (inaudible) to delight myself in [████]." (Interview 2 @ 14:00);

11

### C.      Additional Facts Not Referenced in the Government's Prior Motion[8]

#### i.      The defendant's relationship/conduct with ██████████

In 1999 when the defendant began working at St. Ignatius, ██████████ and his family lived on a property ██████████. ██████ and his family were members of the church, and ██████ was already an altar server. ██████ was thirteen (13) years old. As an altar server to the defendant, ██████ would often accompany the defendant during pre-Mass gathering or other events. ██████ will testify to the following conduct and behavior by the defendant:

➢      The defendant first touched him after a Mass, when the defendant began giving him a shoulder rub. He often saw Cristancho attempting to give shoulder rubs, including to his father. During this shoulder rub, unlike the shoulder rubs he had seen the defendant give others, the defendant also tried to rub his hands down ██████ lower back. The defendant often touched, or tried to touch ██████ thighs, including when ██████ was wearing shorts.

➢      On one occasion, the defendant convinced ██████ to accompany the defendant to the hospital to visit a friend's 14-year-old daughter, who had been in an automobile crash. The defendant told ██████ that it was his (██████ job to be there for the girl and her siblings. The defendant called ██████ into the hospital room while he prayed over the girl. On the drive home, while ██████ was in a vulnerable emotional state, the defendant began to question ██████ about the emotional impact of the visit, and then began to rub and caress ██████

---

[8]   Much of this evidence is part of the defendant's overall conduct and is thus intrinsic to the charged counts in the indictment. "Evidence of uncharged conduct is not "other crimes" evidence subject to Rule 404 if the uncharged conduct "arose out of the same series of transactions as the charged offense, or if [evidence of the uncharged conduct] is necessary to complete the story of the crime on trial." *United States v. Siegel,* 536 F.3d 306, 316 (4th Cir. 2008), *citing United States v. Kennedy,* 32 F.3d 876, 885 (4th Cir. 1994). In the alternative, the evidence is also admissible under Rules 404(b) and 414.

shoulders. ███████ told the defendant to stop and moved away.  The defendant made ███████ feel guilty that ███████ would not allow the defendant to rub his shoulder.  The defendant touched and grabbed ███████ thigh while driving.  The defendant also patted ███████ knee, kept attempting to rub his shoulders, and made comments such as "let it out," and, "it's o.k. to cry."  When ███████ said that he was fine, and that he did not even know the family, the defendant went back to touching ███████ thigh and said, "Son, you had to see this."  This behavior continued until ███████ again physically moved the defendant's hand away.

> ➢  In the summer of 2000, when ███████ was 14, the defendant invited him to a party, but did not mention that it was a pool party.  At the party, the defendant provided ███████ with swim trunks.  The party consisted of children much younger than ███████ and after about 45 minutes, the defendant pulled ███████ into the basement of the house.  The defendant told ███████ that the owner of the house was a chiropractor, and had ███████ lay on a table to receive a back "adjustment," that was nothing more than a caressing massage.  ███████ was wearing only the swim trunks that the defendant had provided.  During the "adjustment," the defendant had a camera, and later showed ███████ photographs of ███████ receiving the "adjustment."

> ➢  When ███████ was 14, the defendant agreed to take him to see an R rated movie.  The defendant became upset when he learned that ███████ invited another friend to go along, because he had wanted to spend time alone with ███████.

> ➢  ███████ will also describe the church rectory where the defendant worked.  He will testify that the defendant had both a digital and a film camera, as well as two flash drives.  It was on one of these flash drives that ███████ while helping the defendant with his computer at the rectory, found the photos of himself on the adjustment table.  ███████ confronted the

defendant about the photos, and the defendant became upset, and denied the existence of the photos. The defendant then told ███████ to not use the other thumb drive.

➤       On two separate occasions, the defendant showed pornography to ███████   The first time the defendant told ███████ that he "found" the pornographic magazine in the church. After showing him the magazine, the defendant told ███████ it was a sin and asked him if he was "gratified" by looking at it. The second time, the defendant showed ███████ digital images of pornography on his computer. The defendant had called ███████ to his home at 9:30 p.m. to assist him with a problem he was having with his computer. When ███████ arrived to help with the computer, he observed that the "problem" with the computer was that a pop-up of a nude female kept appearing on the screen and could not be closed out. When ███████ suggested that he call his father because the defendant's computer had a virus, the defendant unplugged his computer and sent ███████ home. Later, and on multiple occasions, the defendant asked ███████ if he had committed "Onan", or what the Catholic Church considers the sin of masturbation. The defendant often spoke to ███████ about pornography and resisting temptation.

➤       On one occasion, not during a religious service, the defendant offered ███████ the sacrificial wine, which ███████ declined.

➤       In the fall of 2001 when ███████ was 15, he and his family moved ███████. After ███████ moved, the defendant called ███████ "all of the time" while the defendant was driving, and the defendant always carried his mobile phone with him. During one of these calls in the fall of 2001, the defendant informed ███████ that he was having children. The defendant told ███████ that he was going to name one of his sons, ███████ after ███████.[9]

---

[9] ████████████████████████████████████████████████████
████

As will be discussed below, the defendant's conduct towards ███████████ includes attempted child molestation and/or prior bad acts, and overall conduct towards ████████ is relevant to the charged offenses as evidence of identity, motive, intent, and lack of accident or mistake.

     **ii.**       **The defendant's Google and Web Search History**

The defendant's Google account contained the images that are the subject of Count Five (images of ████ penis, at age 2 years, 9 months).[10]  Also located in the defendant's Google account was documentation of the defendant's internet history and search history, at least to the extent they occurred while the defendant was logged into his Google account and were not otherwise deleted.

Web History:  The Google account web history contains approximately 4,000 web pages that were visited between 2011 and 2017.  Many of the web pages visited relate to sex, boys having sex, and masturbation, including the following (spaces added so as not to create hyperlinks in this filing):

- http://www .gettyimages.com/photos/boys-having-sex-with-each-other
- http:// m.newhealthadvisor.com/how-to-masturbate-if-you%27re-a-boy.html
- http://www .redtube.com/?search=school+boy+masturbating+himself+and+cums
- http: //teensboyvideo.com/
- http: //www.xvideos.com/tags/teen-fucking

Search History:  The Google account search history contains approximately 6,000 Google searches between 2011 and 2017.  Many of the searches relate to sex, boys having sex, and masturbation, including the following:

- "two young boys having sex" and "I kiss a boy and liked it lyrics"
- "I kissed a boy kinki kiss"
- "I want to see a teenage boy masturbating"

---

[10] These same images were also found in the Google photos application of the defendant's phone.

- ➢ "show mw a teenage boy masturbating himself"
- ➢ "fucking teens males videos"
- ➢ "i want to see a teenage male masturbating playing with himself"

As will be discussed below, the defendant's search and web history in his Google account is highly relevant to the charged conduct.

### iii.   The defendant's interest in teenagers as demonstrated by his photographing and maintaining images of teenagers from television, media, and billboards/signs

The defendant maintained images on a variety of digital devices/platforms, including phones, SD cards, his Google account, and his iCloud account.  All of these items have been searched pursuant to federal search warrants. Many of the images were produced between December 2010 and June 2013 with a Samsung digital camera.  The evidence will establish that the defendant possessed a Samsung digital camera, and took the images in question.

Of the saved photographs that were taken with the Samsung camera, approximately 90 images depict the faces and images of young teenaged boys from television shows, movies, or advertisements.   The apparent age of males depicted in these images is consistent with the ages of some of the victims in the charged counts.  There were no similar saved images (of television, advertisements, billboards, etc.) depicting females or adults taken with this Samsung digital camera.

The government does not contend that the defendant's possession of these images is a "bad act" or evidence of prior child molestation.   However, these images are relevant to the government's case under the general balancing test provided in Rule 401.  The fact that these images were stored on an SD card and placed in a safe for at least five years has the tendency to make it more probable that the defendant has an interest in young males and particularly is sexually attracted to young boys.

16

## II.   THE LAW

### A.   The elements of the offenses

As a result of the conduct described above, the defendant was charged in  the Second Superseding Indictment with one count of coercion and enticement of a minor to engage in illicit sexual conduct (Count One), six counts of production of child pornography (Counts Two through Seven), and four counts of possession of child pornography (Counts Eight through Eleven).  Below are the elements of the charges in the Superseding Indictment.

    a.   The elements of Count One (Coercion and Enticement):

      i.   The defendant knowingly used a facility or means of interstate commerce to persuade, induce, entice or coerce an individual under the age of eighteen (18) to engage in sexual activity, or attempted to do so;

      ii.   That the defendant believed that such individual was less than eighteen (18) years of age; and

      iii.   That the defendant could have been charged with a criminal offense for engaging in the specified sexual activity.

    b.   The elements of Counts Two through Seven (Production of Child Pornography)

      i.   An actual minor, that is, a real person who was less than 18 years old, was depicted;

      ii.   That the defendant knowingly employed, used, persuaded, induced, enticed or coerced a minor to engage in sexually explicit conduct[11] for the purpose of producing a visual

---

[11] The jury will be instructed that sexually explicit conduct includes the lascivious exhibition of the genitals or pubic area of any person.  The jury will be further instructed, consistent with *Sand*, that the term "lascivious exhibition" means a depiction that displays or brings to view to attract notice to the genitals or pubic area of children in order to excite lustfulness or sexual stimulation in the viewer, and that the jury should consider the following, non-exhaustive list of questions in reaching their decision:

➤ Whether the focal point of the visual depiction is on the child's genitals or pubic area, or whether there is some other focal area;

➤ Whether the setting of the visual depiction makes it appear to be sexually suggestive, for example, in a place or pose generally associated with sexual activity;

➤ Whether the child is displayed in an unnatural pose, or in inappropriate attire, considering the age of the child;

depiction of such conduct; and

iii. The defendant had reason to know that the visual depiction would be transported in interstate commerce, said visual depiction was transported in interstate or foreign commerce, or the materials used to produce the visual depiction were transported in interstate commerce.

c. <u>The elements of Counts Eight through Eleven (Possession of Child Pornography):</u>

i. First, that the defendant knowingly transported (or shipped or distributed or received or sold or possessed with intent to sell) or possessed a visual depiction;

ii. Second, that the visual depiction was transported in or affecting interstate or foreign commerce or the visual depiction was produced using materials that had been transported in or affecting interstate or foreign commerce;

iii. Third, that the production of the visual depiction involved the use of a minor engaging in sexually explicit conduct, and portrays that minor engaged in that conduct; and

iv. Fourth, that the defendant knew that the production of the visual depiction involved the use of a minor engaging in sexually explicit conduct, and portrayed a minor engaged in that conduct.

## B.   **Federal Rule of Evidence 414**

Rule 414 provides that in a criminal case in which the defendant is accused of a sexual assault or child molestation, evidence of the defendant's commission of another offense of sexual assault or child molestation is admissible, and may be considered for its bearing on *any matter to which it is relevant*. Fed. R. Evid. 414(a) (emphasis added). Such evidence is not temporally limited to prior acts of a defendant, but instead encompasses all other acts, whether before, after, or contemporaneous with the charged conduct. *See United States v. Mohr*, 318 F.3d 613, 617 (4th

---

> Whether the child is fully or partially clothed, or nude, although nudity is not in and of itself lascivious;
> Whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity; and
> Whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

Cir. 2003) (discussing Rule 404(b)); *see also United States v. Sioux*, 362 F.3d 1241, 1246–47 (9th

Cir. 2004).

Rule 414 provides in pertinent part:

In a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other child molestation. The evidence may be considered on any matter to which it is relevant.

*Id.* Child molestation is defined in the rule to include both state and federal crimes involving

sexual abuse and exploitation of children.[12]   Rule 414 defines "child molestation" broadly to

include the production (2251(a)) and possession (2252A) of child pornography:

(A)    Any conduct prohibited by 18 U.S.C. chapter 109A and committed with a child;

**(B)    Any conduct prohibited by 18 U.S.C. chapter 110;**

(C)    Contact between any part of the defendant's body—or an object—and a child's genitals or anus;

(D)    Contact between the defendant's genitals or anus and any part of a child's body;

(E)    Deriving sexual pleasure or gratification from inflicting death, bodily injury, or physical pain on a child; or

(F)    An attempt or conspiracy to engage in conduct described in subparagraphs (A)-(E).

Fed. R. Evid. 414(d) (emphasis added).

Rule 414 "create[s] an exception to the general ban on propensity evidence contained in

Rule 404(b)." *United States v. Seymour*, 468 F.3d 378, 385 (6th Cir. 2006); *United States v. Kelly*,

510 F.3d 433, 436-37 (4th Cir. 2007) (Rule 414 "is an exception to the general rule that evidence

of past crimes may not be used 'to prove the character of a person in order to show action in

---

[12]  Rule 414 defines a "child" as a person under the age of 14. Thus, the admissibility of the defendant's conduct towards ██ (12), ██ (infant), ██ (11), ██ (11), and ██ (4-5), should be considered under Rule 404(b).  The admissibility of the defendant's conduct towards ██ (starting at age 13 and continuing to age 15) should also be considered under Rule 414.

conformity therewith.'"); *United States v. Jones*, 748 F.3d 64, 70 (1st Cir. 2014) ("Rule 414 removes Rule 404(b)'s blanket ban on propensity inferences in child-molestation chases.").

In *United States v. Stamper*, the court laid out three elements required for evidence to be admissible under Rule 414:

> (1) the defendant must be accused of an offense of child molestation;
>
> (2) the evidence proffered must pertain to the defendant's commission of another child molestation; and
>
> (3) the evidence must be relevant.

*United States v. Stamper*, 106 F. App'x 833, 835 (4th Cir. 2004) (unpublished).  In support of admitting evidence of child molestation, the court in *United States v. Kelly* noted that Rule 414 reflects Congress's view that this type of evidence "is typically relevant and probative." *United States v. Kelly*, 510 F.3d 433, 437 (4th Cir. 2007) (quoting 140 Cong. Rec. S12990 (daily ed. Sept. 20, 1994) (Statement of Sen. Dole)).  Additionally, the court noted that there is a "strong legislative judgment that evidence of prior sexual offenses should ordinarily be admissible." *Id.* (*quoting United States v. LeCompte*, 131 F.3d 767, 769 (8th Cir. 1997)). Therefore, the court should treat Rule 414 as a rule of inclusion and generally admit evidence of prior sexual offenses.  *See Id.*

Evidence such as this that meets the requirements of Rule 414 is still subject to the balancing test of Rule 403.  *Id.*   Evidence admissible under Rule 414 "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  Fed. R. Evid. 403.

The Fourth Circuit has found that, "[u]nlike Rule 404(b), Rule 414 allows the admission of evidence for the purpose of establishing propensity to commit other sexual offenses.  In allowing this evidence, Rule 414 reflects Congress's view that this propensity evidence is typically relevant

and probative."  *Kelly*, 510 F.3d at 437; *see also United States v. Larson*, 112 F.3d 600, 604 (2d Cir. 1997) ("The presumption is that the evidence admissible pursuant to these rules is typically relevant and probative, and that its probative value is not outweighed by any risk of prejudice."); *United States v. Bentley*, 561 F.3d 803, 815 (8th Cir. 2009) ("Because propensity evidence is admissible under Rule 414, the fact that evidence of prior acts suggests a propensity to molest children is not unfair prejudice."); *United States v. Loughry*, 660 F.3d 965, 970 (7th Cir. 2011) (Rule 414 evidence "cannot be excluded under Rule 403 simply because it tends to show that the defendant has a propensity to commit a sex offense.").

Additionally, while evidence of prior sexual acts will always be "emotionally charged and inflammatory," courts must keep in mind that the allegation that the defendant committed the charged crimes will be just as inflammatory. *LeMay*, 260 F.3d at 1030.  In enacting Rule 414, Congress was aware that evidence of child sexual abuse carries a "unique stigma" and risk of jury prejudice. *United States v. LeCompte*, 131 F.3d 767, 769-70 (8th Cir. 1997).  Nevertheless, Congress intended to override concerns about the stigma of such evidence—concerns which had previously excluded prior sexual act evidence—by enacting Rule 414. *Id*.

The Fourth Circuit instructs district courts to consider a number of factors when subjecting Rule 414 evidence to the Rule 403 balancing test, including:

> (1) The similarity between the previous offense and the charged crime;
> (2) The temporal proximity between the two crimes;
> (3) The frequency of the prior acts;
> (4) The presence or absence of any intervening acts; and
> (5) The reliability of the evidence of the past offense.

*Kelly*, 510 F.3d at 437.  In *Kelly*, the Fourth Circuit acknowledged the split between the Ninth and Seventh Circuits as to whether a district court must address these or other specific factors. Compare *United States v. LeMay*, 260 F.3d 1018, 1027-28 (9th Cir. 2001), with *United States v. Hawpetoss*,

478 F.3d 820, 825-26 (7th Cir. 2007). "Although disposition of this case does not require choosing between these views, the Seventh Circuit's more flexible approach seems preferable in view of this circuit's general view that a district court has 'wide discretion' in admitting or excluding evidence under Rule 403." *Kelly*, 510 F.3d at 437, n.3.

> i.    **Congress intended, and multiple circuits in addition to the 4th Circuit have upheld, admission of propensity evidence under Rule 414.**
>
> a.    Congress intended for Rule 414 to replace Rule 404(b) in sex crimes.

Rule 414 was designed to "supersede in sex offense cases the restrictive aspects of Federal Rule of Evidence 404(b)" and to create a presumption "in favor of admission" of prior sexual offense evidence. *Floor Statement of the Principal House Sponsor, Rep. Susan Molinari, Concerning the Prior Crimes Evidence Rules for Sexual Assault and Child Molestation Cases* (Cong. Rec. H8991-92, Aug. 21, 1994), included in Advisory Committee's Note to Rules 413 and 414; *available at* 140 Cong. Rec. S12990-01, September 20, 1994; *see also* 140 Cong. Rec. S12990; David J. Karp, *Evidence of Propensity and Probability in Sex Offense Cases and Other Cases*, 70 Chi. Kent. L. Rev. 15, 19 (1994).  The legislative sponsors of Rule 414 specified that "[i]n contrast to Rule 404(b)'s general prohibition of evidence of character or propensity," Rule 414 "authorize[s] admission and consideration of evidence of an uncharged offense for its bearing 'on any matter to which it is relevant.' This includes the defendant's propensity to commit sexual assault or child molestation offenses, and assessment of the probability or improbability that the defendant has been falsely or mistakenly accused of such an offense . . . ." 140 Cong. Rec. S12990-01.

The legislative sponsors explained the importance of this evidence in cases where a child is the victim:

> The [proposed] reform effected by th[is] rule is critical to the protection of the public from rapists and child molesters, and is justified by the distinctive characteristics of the cases it will affect. In child molestation cases, for example, a history of similar acts tends to be exceptionally probative because it shows an unusual disposition of the defendant—a sexual or sadosexual interest in children—that simply does not exist in ordinary people. Moreover, such cases require reliance on child victims whose credibility can readily be attacked in the absence of substantial corroboration. In such cases, there is a compelling public interest in admitting all significant evidence that will illumine the credibility of the charge and any denial by the defense.

*Id.*

Congress recognized and intended that Rule 414 would make the admission of similar crimes evidence in federal sex offense cases the norm, and its exclusion the exception:

> The practical effect of the new rules is to put evidence of uncharged offenses in sexual assault and child molestation cases on the same footing as other types of relevant evidence that are not subject to a special exclusionary rule. The presumption is in favor of admission. The underlying legislative judgment is that the evidence admissible pursuant to the proposed rules is typically relevant and probative, and that its probative value is normally not outweighed by any risk of prejudice or other adverse effects.

140 Cong. Rec. H8991-92 (1994) (Statements of Rep. Molinari and Senator Dole) (emphasis added); *see also* 137 Cong. Rec. S3212, S338-3242 (1991); Karp, 70 Chi. Kent L. Rev. at 19.

b.   Multiple circuits, including the 4th, have upheld Rule 414.

The Fourth Circuit, like other circuits, has affirmed that evidence admitted under Rule 414 may be considered by the jury for any relevant purpose, including proof that a defendant has sexually predatory propensities. *United States v. Kelly*, 510 F.3d 433, 436-37 (4th Cir. 2007). "Rule 414 allows the admission of evidence for the purpose of establishing propensity to commit other sexual offenses. In allowing this evidence, courts have noted that Rule 414 reflects Congress's view that this propensity evidence is typically relevant and probative." *Id.* at 437; *see United States v. Jones*, 748 F.3d 64, 70 (1st Cir. 2014) ("Rule 414 removes Rule 404(b)'s blanket ban on propensity inferences in child-molestation chases."); *United States v. Seymour*, 468 F.3d 378, 385

23

(6th Cir. 2006) (Rule 414 "create[s] an exception to the general ban on propensity evidence contained in Rule 404(b)"); *United States v. Bentley*, 561 F.3d 803, 815 (8th Cir. 2009) ("Because propensity evidence is admissible under Rule 414, the fact that evidence of prior acts suggests a propensity to molest children is not unfair prejudice.").

### C.   Federal Rule of Evidence 404(b)

Federal Rule of Evidence 404(b) provides that in a criminal case, evidence of other acts of the defendant is admissible for the showing of "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or lack of accident." Fed. R. Evid. 404(b). *See Huddleston v. United States*, 485 U.S. 681, 685 (1988) ("Extrinsic acts evidence may be critical to the establishment of the truth as to a disputed issue, especially when that issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct.").

The Fourth Circuit uses a multi-factor test to determine admissibility of "other acts evidence" under Rule 404(b). *United States v. Queen*, 132 F.3d 991, 997 (4th Cir. 1997). To be admitted under 404(b), other acts evidence must meet all the *Queen* factors:

(1)    The evidence must be relevant to an issue, such as an element of an offense, and must not be offered to establish the general character of the defendant. In this regard, the more similar the prior act is (in terms of physical similarity or mental state) to the act being proved, the more relevant it becomes;

(2)    The act must be necessary in the sense that it is probative of an essential claim or an element of the offense;

(3)    The evidence must be reliable; and

(4)    The evidence's probative value must not be substantially outweighed by confusion or unfair prejudice in the sense that it tends to subordinate reason to emotion in the factfinding process.

*Queen*, 132 F.3d at 997.

24

Such evidence may also be offered to rebut reasonably anticipated defenses. *See United States v. Hanson*, 936 F.3d 876, 882 (9th Cir. 2019) (affirming prior acts evidence of defendant's possession of child pornography under 414 and alternatively 404(b) to rebut defendant's defense about how he obtained the charged child pornography); *United States v. Hardrick*, 766 F.3d 1051, at 1055–56 (9th Cir. 2014) (affirming district court's admission of testimony regarding uncharged items of child pornography to prove knowledge and rebut defenses) (*citing United States v. Schene,* 543 F.3d 627, 643 (10th Cir. 2008) (affirming district court's admission of uncharged child pornography images for the purpose of proving the defendant's intent and knowledge)); *United States v. Norweathers*, 895 F.3d 485, 490-91 (7th Cir. 2018) (affirming the admission under 403 and 404(b) of an uncharged email exchange that the government used to weaken the defendant's anticipated defense that he did not distribute child pornography); *United States v. Salcido,* 506 F.3d 729, 735 (9th Cir. 2007) (per curiam) (affirming district court's admission of defendant's sexually explicit instant messaging chats for the purpose of proving the defendant's knowledge); *United States v. Long*, 328 F.3d 655, 663–65 (D.C. Cir. 2003) (affirming district court's admission of uncharged child pornography photographs found in the defendant's home for the purpose of proving the defendant's possession and intent); *United States v. Forrest*, 429 F.3d 73, 79-80 (4th Cir. 2005) (affirming the district court's admission of pornographic and nonpornographic images of adult males under 403, noting that such images "directly rebutted" the defendant's argument that he did not produce child pornography found alongside the adult images).

Each item listed above satisfies these requirements and is offered to prove the defendant's motive opportunity, intent, preparation, knowledge and absence of mistake, for the reasons explained below.

## D.   <u>Federal Rule of Evidence 401</u>

Federal Rule of Evidence 401 defines relevance as evidence that "has any tendency to make

a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action."  Fed. R. Evid. 401.  A "fact of consequence" is not limited to the ultimate issue or elements in a case, but rather can be any step along a path of inference that leads to an "ultimate fact."  *Old Chief v. United States*, 519 U.S. 172, 179 (1997).  "Facts of consequence" also include reasonably anticipated defenses. *United States v. Lewis*, 759 F.2d 1316, 1349 n.14 (8th Cir.), *cert. denied,* 474 U.S. 994, 106 S.Ct. 406, 407, 88 L.Ed.2d 357 (1985); *United States v. Curtin*, 489 F.3d 935, 940 (9th Cir. 2007); *Rooks v. United States*, No. 4:07CR142, 2014 WL 949100, at *7 (E.D. Va. Mar. 11, 2014).

## ARGUMENT

A.   <u>The defendant's abuse of ▮▮▮ production of child pornography of ▮ 4 children, and possession of child pornography are admissible under Rule 414 for any relevant purpose, including as propensity evidence.</u>

   i.   **Count 1 and Counts 2-7 are properly joined and the evidence from each is mutually admissible.**

As discussed in the government's response to the defendant's motion for severance, the counts in the indictment are properly joined, and the motion for severance should be denied. Because enticement, production of child pornography, and possession of child pornography all relate to the sexual exploitation of minors and are "similar in character," courts have universally held that such charges should be joined in a single trial.  *See* Doc. 79, Gov. Response to Motion to Sever, at 8- 20.[13]  Those same courts have consistently held that joinder of such counts does not

---

[13]  In addition to the cases cited in the government's response, at least two other courts have similarly denied motions to sever enticement and child pornography charges. *See, e.g., United States v. Davies*, No. 3:08-CR-00253, 2010 WL 3024844, at *5 (M.D. Pa. July 29, 2010) (agreeing with the Second Circuit that enticement of a minor to engage in sexual activity and possession of child pornography have a "sufficient logical connection that they can be said to be of the same or similar character"); *United States v. Totoro*, No. 15-291, 2017 WL 3189216, at *16-17 (E.D. Pa. July 27, 2017) (denying defendant's motion to sever enticement count from child pornography counts).

establish prejudice or impact the defendant's right to a fair trial. *Id.*

As the cases denying severance establish, regardless of the severance / joinder issue, evidence pertaining to each of the counts is admissible under Rule 414 (and 404(b)) in every other count.

### ii.    The defendant is charged with offenses involving child molestation.

Applying the elements for 414 admissibility laid out by the court in *Stamper*, the defendant's charged conduct is mutually admissible.  All of the charged offenses fall within Rule 414's requirement that the defendant be charged with an offense involving "child molestation." First, Count One alleges that, "From in or about 2002 through 2003, CRISTANCHO frequently arranged for Minor Victim 1 to spend time at CRISTANCHO's residence in Harford County, Maryland, where CRISTANCHO routinely sexually molested Minor Victim 1."  The abuse included oral and anal sex, and clearly satisfies 414(d)(2)(c) ("Contact between any part of the defendant's body—or an object—and a child's genitals or anus"), 414(d)(2)(D) ("Contact between the defendant's genitals or anus and any part of a child's body"), and 414(d)(2)(F) ("An attempt or conspiracy to engage in conduct described in subparagraphs (A)-(E)").  Similarly, Counts 2 through 11 fall within Rule 414 because all are "conduct prohibited by 18 U.S.C. chapter 110." Sexual exploitation of a minor and possession of child pornography are by definition "child molestation," as contemplated by the Rule.

### iii.    The abuse of ▮▮▮ production of child pornography of ▮▮ 4 children, and possession of child pornography are relevant and highly probative of the defendant's motive to abuse ▮▮▮ his specific intent to produce child pornography, and his intent to possess child pornography.

Next, the evidence is relevant.  The government will be required to prove that the defendant knowingly engaged in unlawful sexual activity with a minor (Count One), that the defendant knowingly used a minor to engage in sexually explicit conduct *for the purpose of producing a*

*visual depiction of such conduct* (including that when the defendant took the photos he "intended to elicit a sexual response") (Counts Two – Seven), and that he knowingly possessed child pornography (Counts Eight – Eleven).  The evidence of each charged count is relevant to show that the defendant has a sexual interest in minors,[14] to show that he had the purpose of producing child pornography to elicit a sexual response, to show that his continued possession of those images was knowing, to negate any defenses raised by the defendant that the pictures were not taken by the defendant, and alternatively that the pictures were not taken with any sexual intent.  The proffered evidence therefore meets all of the requirements of Rule 414.

### iv.   The danger of prejudice does not "substantially outweigh" the probative value of defendant's prior molestation offenses.

Furthermore, applying the factors laid out by the court in *Kelly*, the evidence passes the Rule 403 balancing test.  Because Rule 414 is a rule of inclusion, the law requires exclusion of relevant evidence only when the probative value of evidence is substantially outweighed by the danger of unfair prejudice.  *Kelly*, 510 F.3d at 437.  Evaluation of the evidence of the defendant's other child molestation offense conduct weighs in favor of admitting the evidence at trial.

### a.   The defendant's conduct is similar.

First, the similarity between the offenses is clear – all involve the sexual exploitation of minors.[15]  Although the similarity between the exploitation in Count One and in Counts Two – Seven is apparent because all involved the defendant personally exploiting the minor, courts have also universally found sufficient similarity between sexual abuse of a child and child pornography

---

[14]  The Fourth Circuit has held that prior sexual abuse "is highly probative because it tends to prove a "sexual attraction towards children."  *United States v. Rice*, 347 F. App'x 904, 906 (4th Cir. 2009); *United States v. Kelly*, 510 F.3d 433, 438 (4th Cir. 2007).

[15]  The cases cited in the government's response to the motion to sever are also instructive here – as each found that these offenses here were "similar in character."

trafficking offenses.  *See United States v. Bentley*, 475 F. Supp. 2d 852, 858-59 (N.D. Iowa 2007) ("[P]roducing, possessing or transporting pornographic photographs of children are, in themselves, forms of child sexual abuse. . . . Congress implicitly recognized these similarities between acts of physical sexual abuse against children and child pornography offenses when it commonly defined them as 'offenses of child molestation' within the ambit of Rule 414."); *United States v. Spoor*, 904 F.3d 141, 154–55 (2d Cir. 2018) (upholding the district court's decision to admit a prior conviction of sexual abuse of two boys where the boys "were similar in age to the boys in the videos"); *United States v. Sebolt*, 460 F.3d 910, 917 (7th Cir. 2006) ("[T]he molestations and the evidence supporting the statutory criminal elements were similar in character, *i.e.*, establishing [his] sexually deviant mental state ...."); *United States v. Brand*, 467 F.3d 179, 198 (2d Cir. 2006) (noting in the analogous Rule 404(b) context that "possession of child pornography by itself shares a connection or similarity with pedophilia"); *United States v. Olson*, No. CR 16-30-BLG-SPW, 2017 WL 2226555, at *2 (D. Mont. May 19, 2017), *aff'd*, 755 F. App'x 716 (9th Cir. 2019).  For example, in *United States v. Emmert*, the Eighth Circuit held that a district court did not abuse its discretion when it allowed Rule 414 evidence of prior sexual abuse where the prior "sexual abuse and [current] child pornography victims were similar in age, and [the defendant] performed or possessed images depicting similar explicit acts on each victim."  825 F.3d 906, 909 (8th Cir. 2016); *United States v. Thornhill,* 940 F.3d 1114, 1119 (9th Cir. 2019).

Additionally, the defendant first sexually abused ███ on his 12ᵗʰ birthday, and continued to abuse him for more than a year.  Similarly, Count Three charges the defendant with sexually exploiting ███ and ███ when they were eleven years old.

### b.  The defendant's conduct is sufficiently close in time.

The defendant's conduct in each charged count is also sufficiently close in time.  The

offenses occurred in 2002-2003, 2012, 2015, and 2017.  Again, the cases on joinder / severance are instructive here.  As discussed at pages 20-21 of the government's response, joinder has been held appropriate when offenses occurred many more years apart that the 8-9 years between Count One and the beginning of the production counts here.  *See United States v. Kelly*, (20 years); *United States v. Rice*, 347 F. App'x 904, 905 (4th Cir. 2009) (unpublished) (between ten and eighteen years prior to the charged offenses).  Cases from other circuits have similarly held that Rule 414's temporal requirement is met when the sexual molestation acts are separated by many years.

Additionally, "[t]he legislative history of Rule 414 reveals that Congress meant its temporal scope to be broad, allowing the court to admit evidence of Rule 414 acts that occurred more than 20 years before trial."  *United States v. Larson*, 112 F.3d 600, 605 (2d Cir. 1997); *see also United States v. Gabe*, 237 F.3d 954, 960 (8th Cir. 2001) ("When Rule 414 was enacted, Congress expressly rejected imposing any time limit on prior sex offense evidence.").  In *Larson*, defendant was convicted of interstate transportation of a minor with intent to engage in criminal sexual conduct in violation of § 2423(a).  *Larson*, 112 F.3d at 602.  The court admitted the testimony of a witness who alleged that Larson similarly victimized him when he was a minor 16 to 20 years earlier.  *Id.*  The court found that the 16-to-20-year-old events underlying the witness's testimony were "not so remote in time so as to constitute unfair prejudice to the defendant."  *Id.*  Moreover, the court found that that "testimony of uncharged acts of sexual conduct is admissible under either Rule 404(b) or 414 because it goes to the presence of a common scheme or plan on the part of the defendant and also is relevant to the defendant's intent and motive in the commission of the charged offense."  *Id.* at 602-03; *see also Kelly*, 510 F.3d at 437.

In *United States v. Meacham*, the defendant was charged with transporting a minor in violation of § 2423, and the court affirmed the admission of evidence of child molestation

occurring approximately *30 years* before trial under either Rule 404(b) or Rule 414).  115 F.3d 1488, 1490, 1495 (10th Cir. 1997).  Similarly, in *Gabe*, where the defendant was charged with abusive sexual contact with a child under the age of 12 and aggravated sexual abuse, the Eighth Circuit held that the district court did not abuse its discretion in admitting Rule 414 testimony that the defendant had sexually abused a seven-year-old *twenty years earlier*.  *Gabe*, 237 F.3d at 956, 960.  The court agreed that the testimony was "highly probative" because the abuse alleged by the now-27-year-old "was almost identical to the abuse of [the minor] alleged in Count One.  Both were young girls of six or seven years at the time of the offenses; both were related to [the defendant]; and the sexual nature of the offenses was similar."  *Id.* at 959; *see also United States v. Emmert*, 825 F. 3d 906, 909 (8th Cir. 2016) (holding that defendant's conviction for sexual abuse of a minor twenty years before the present offense was properly introduced under Rule 414).

Thus, the conduct charged in the Second Superseding Indictment is well within the timeframe of Rule 414's temporal requirement.

### c.  The defendant's conduct was frequent.

As the facts demonstrate, the defendant has a long-standing sexual interest in children that continued from 2002 through his arrest in 2017.  The defendant's conduct includes grooming and sexually abusing young boys from approximately 1999-2004, producing images of ███ minor children in 2012, 2015, 2016, and 2017, and searching the internet and visiting websites looking for pornography of boys from 2014 to 2017.

### d.  There have been no intervening circumstances.

There have also been no relevant intervening circumstances.  Thus, this factor also weighs in favor of admitting evidence of the defendant's conduct relating to child molestation, since no intervening facts between the charged conduct occurred to lessen the probative value or increase

31

the prejudicial effect of the uncharged conduct. Instead, the facts detailed above show that the defendant has consistently engaged in conduct demonstrating his sexual attraction to minors.

### e.   The evidence is reliable.

Finally, the evidence is reliable – as evidenced by the grand jury's finding of probable cause.

When viewing all of these factors together, it is clear that the evidence of the defendant's acts of child molestation as charged in the indictment passes the balancing test of Rule 403. Additionally, if there is any prejudicial effect of admitting this evidence, it is the same as the probative value of the evidence – it tends to prove that the defendant has a sexual attraction towards children. *See Kelly*, 510 F.3d at 438; *Rice*, 347 F. App'x at 906. Therefore, the evidence is clearly not *unfairly* prejudicial and is admissible under Rules 414 and 403.[16]

### f.   The evidence is also admissible under Rule 404(b).

In addition to being specifically allowed under Rule 414, the evidence of the defendant's conduct towards ▮▮▮ (Minor Victim 1 in Count One), including his sexual abuse, grooming, sexual molestation of ▮▮▮ and his sleeping alone with ▮▮▮ in the defendant's locked bedroom, are highly relevant and probative under 404(b) to prove the depictions in Counts Two through Seven were taken to "excite lustfulness or sexual stimulation in the [defendant]". It is unmistakable that the defendant's sexual abuse of ▮▮▮ is evidence that the defendant is sexually attracted to minor boys, that he had the motive to produce the sexually explicit images in Counts Two through Seven, and that he intended them for his own sexual stimulation. *Rice*, 347 F. App'x

---

[16] The court in *Stamper* suggested that in child molestation cases, Rule 414 replaces Rule 404(b) for admissibility of prior bad acts involving child molestation. *Stamper*, 106 Fed. App'x at 835 (citing *United States v. Castillo*, 140 F.3d 874, 879 (10th Cir. 1998)). Out of an abundance of caution, however, the government offers the Rule 404(b) analysis discussed below as an alternative to the admission of evidence of child molestation based on Rule 414.

at 906; *Kelly*, 510 F.3d at 438.

Moreover, such evidence also is relevant to disprove potential defenses.  The defendant may claim that he did not produce or aid and abet the production of all or some of the images, or that they were taken as part of other photographs, by mistake.  The defendant's sexual abuse of ██ is clearly relevant to the identity of the defendant and the person responsible for the sexually explicit depictions in Counts Two through Seven, and that he did not take them by mistake or accident.  The evidence is also mutually admissible under Rule 404(b) to show a common scheme or plan.  *Larson*, 112 F.3d at 602.

Similarly, relating to Count One, the defendant is likely to argue that he did *not* engage in sex acts with ██ who had just turned 12 years old.  The substantial evidence – including witness testimony, digital evidence, search warrant executions, and the defendant's statement – to establish that the defendant took numerous images of child pornography in Counts 2 through 7 is relevant and highly probative to Count One, and is admissible under 404(b).  The defendant's production of close-up images of the genitals of a baby, a toddler, and two 11-year-olds is highly probative of his motive and intent to sexually abuse ██ a minor.

Moreover, to the extent that any individual portions of evidence are not mutually admissible, any prejudice resulting from a single trial can be cured by means less restrictive than severance.  *United States v. Elshinawy*, No. CR ELH-16-0009, 2017 WL 876484, at *19 (D. Md. Mar. 6, 2017); *see Zafiro*, 506 U.S. at 539 (recognizing "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice" permit denial of severance).  As this Court noted in *Elshinawy*, "[a] district court may instruct a jury that a separate crime or offense is charged in each count of the indictment and each must be considered separately." *Id.*  As the court recognized in *Cardwell*, 433 F.3d at 388, such a jury charge "neutralized the possibility that the

jury would hold the defendant's felony status against him when considering his guilt on other charges." *Id*.   Upon request of the parties, the Court will issue *Sand*, Modern Federal Jury Instructions, 3-6 (separate consideration of multiple counts—single defendant), and the jury is presumed to follow the instruction that the verdict on any one count should not control the verdict on any other count.  Moreover, "[c]omplete, mutual admissibility is not a requirement for valid joinder." *United States v. Jamar*, 561 F.2d 1103, 1108 n.8 (4th Cir. 1977).

> **B.**    **The evidence of the defendant's attempted molestation, and other conduct towards ███████ is admissible.**

> **i.**    **The evidence is admissible under Rule 414 for any relevant purpose, including as propensity evidence.**

The defendant's conduct towards ██████ viewed in its entirety, is evidence of the defendant's attempted sexual molestation of a minor, and falls within the purview of Rule 414. For the same reasons that the evidence of the defendant's abuse of ███ should be joined with the remaining counts and is otherwise admissible in a trial of those counts, his conduct towards ██████ is also admissible.  Notably, the defendant's conduct towards ██████ involved highly similar conduct, and occurred immediately before the defendant groomed and abused ███  The defendant's apparent infatuation with ██████ age 13 at the time, began shortly after the defendant arrived at St. Ignatius and continued even after ██████ family moved ████████ in 2001.  The defendant's grooming of ██████ included overly affectionate behavior, giving "shoulder rubs" and "adjustments," expressing intimate personal feelings, and even naming his son after ██████  Similarly, ███ was 12 when the defendant first abused him, and the defendant's grooming included date-like dinners, telling ███ he loved him, using ████ legs as a pillow, and sleeping in the same bed.  Most strikingly similar, the defendant showed pornography to both ██████ and ████ a classic grooming behavior used by child sex abusers to normalize

sexual conduct by the minors.

Thus, the three elements of 414 are met:  the defendant is charged with child molestation, the evidence of the defendant's conduct towards ███████ constitutes attempted child molestation, and the evidence is probative to numerous critical aspects of the charges, most notably the defendant's sexual interest in minors.  Additionally, for the same reasons addressed above, the first 4 factors of Rule 414's 403 analysis are met (similarity, temporal proximity, frequency, lack of intervening circumstances).

As to reliability, Mr. ███████ will testify under oath, subject to cross-examination, regarding his interactions with the defendant while he was in middle and high school 1999-2001. ███████ has no interest in the proceedings, and there is nothing to question his credibility in any way. ███████ works in child development and in late 1999 learned about grooming practices by adults in positions of trust. ███████ who had "always struggled defining his relationship with Cristancho," searched the defendant's name, learned about the defendant's arrest, and called the Harford County State's Attorney's Office.  The defendant has been provided with the report of ███████ interview, which occurred following ███████ call, in early 2020.

███████ testimony is admissible irrespective of his not being the subject of a count in the Second Superseding Indictment.  Courts have admitted evidence where the victim of the charged offense and the victim in the evidence admitted are different.  In *Reigle*, the Fourth Circuit held that Judge Garbis did not err in admitting evidence under 404(b) of the defendant's molestation of children who were not the victim subjects in the child pornography produced by the defendant. *United States v. Reigle*, 228 F. App'x 353, 356 (4th Cir. 2007).  In *United States v. Foley*, 740 F.3d 1079, the Seventh Circuit affirmed the district court's admission of evidence under Rule 413 of a minor male's testimony (different from the minor victim in the charged offense) that

35

several years earlier the defendant had sexually molested him.  740 F.3d 1079, 1087-88 (7th Cir. 2014) ("Under Rule 414, Minor Male B's testimony about his past molestation was admissible to prove Foley's propensity to produce and possess child pornography under federal law.").

> ### ii.   The evidence of the defendant's conduct towards ███████ is also admissible under Rule 404(b).

In addition to being specifically allowed under Rule 414, the evidence of the defendant's conduct towards ██████ is highly relevant and probative under 404(b) to all the counts of the Second Superseding Indictment.  First, the defendant's conduct towards ██████ is relevant to the defendant's sexual attraction to minors.  The striking similarity of his conduct towards ███ and ██████ fits squarely within Rule 404(b)'s language – motive, intent, identity, common scheme or plan, modus operandi.  The defendant's conduct toward █████ is also relevant to prove the depictions in Counts Two through Seven were taken to "excite lustfulness or sexual stimulation in the [defendant]".  And the conduct also establishes the defendant's identity as the photographer, and that the images were not an accident or mistake.

Finally, the evidence of the defendant's conduct towards ██████ is also admissible under Fed. R. Evid. 403.  When applying the Rule 403 balancing test to this type of evidence, the courts have noted that exclusion is only required in "those instances where the trial judge believes that there is a genuine risk that the emotions of the jury will be excited to irrational behavior, and that this risk is disproportionate to the probative value of the offered evidence."  *Morgan v. Foretich*, 846 F.2d 941, 945 (4th Cir. 1988) (*quoting United States v. Masters*, 622 F.2d 83, 87).  Evidence of sexual molestation of a child always has the potential for prejudice.  That risk does not, however, automatically exclude the admissibility of the evidence, especially in a case where the charges are already focused on the production of child pornography and the sexual molestation of children. Given the overwhelming probative value of this evidence, the similarity to the charged conduct,

and the presumption in favor of admission, the probative value of this evidence is clearly not substantially outweighed by the risk of unfair prejudice, and thus, the evidence should be admitted.

      **C.**      **The remaining other acts evidence is admissible as intrinsic to the charged conduct and Federal Rule of Evidence 404(b).**

"Although it is not mentioned in the rule, there is no doubt that proving predisposition is one of the purposes for which bad-act evidence may be admissible." *United States v. McLaurin*, 764 F.3d 372, 308 (4th Cir. 2014); *see also United States v. Wolford*, 386 F. App'x 479, 484 (5th Cir. 2010) (affirming admission of pornographic images of children found on defendant's computer as evidence of defendant's motive and intent to entice a minor to engage in illegal sex acts).

      **i.**      **Msgr. ███ testimony that the defendant was affectionate to minors, even after being admonished.**

Msgr. ███ testimony is probative to show the defendant's intent, motive, lack of accident or mistake, and knowledge. That the defendant was particularly affectionate towards minors, including altar servers, is relevant to the defendant's sexual attraction to minors, a critical issue in all of the counts of the Second Superseding Indictment. Msgr. ███ will describe that the defendant's regular interactions with young boys, including ███ was different in character than his interaction with others. He will also testify that despite being admonished to stop what was clearly inappropriate behavior, the defendant continued to hug and kiss the minors in an inappropriate way. This is further evidence of the defendant's preoccupation with young boys. Such evidence is relevant to show motive to abuse ███ and is equally probative of the defendant's intent to produce lascivious images of minors' genitals, as well as evidence of the defendant's identity as the person who produced the images.

ii.      **The defendant's internet web pages and search history from his Google account.**

The defendant's search and web history relating to sex, boys having sex, and masturbation, is highly relevant to the charged conduct.  First, it is evidence that the defendant had the motive and intent to sexually abuse ███ since this evidence makes it more likely that he is sexually attracted to minor boys around ███ age.  Next, the defendant's searching for *any* pornography or images of sex acts makes it more likely that the photographs he produced that are the subject of counts 2 through 7 were "intended to elicit a sexual response."  However, the fact that his specific interest is in pornography *of minors* engaged in sexually explicit conduct, or even "teens" engaged in sexually explicit conduct, is powerful evidence that his producing images of the genitals of his minor children was intended to elicit a sexual response.  The government anticipates that the defendant will argue, based on his statements to investigators, that the images in Counts 2 through 7 do not constitute child pornography, and further, that from the defendant's perspective, these were nothing more than family photos, with no sexual intent.  The defendant's seeking out and visiting web sites and images depicting "boys" and "teens" "fucking," "masturbating," and "having sex," is evidence the jury must hear to evaluate the purpose of his conduct.[17]

---

[17] In deciding whether photos are "lascivious," the analysis is not limited to four corners of photographs, but also includes surrounding circumstance.  *Courtade v. United States*, No. 2:15CR29, 2017 WL 6397105, at *7 (E.D. Va. Dec. 13, 2017), *aff'd*, 929 F.3d 186 (4th Cir. 2019), *as amended* (July 10, 2019);  *See also United States v. Barry*, 634 F. App'x 407, 415 (5th Cir. 2015) (in evaluating the defendant's images of his children's genitals, the analysis included that the defendant's computer included chat history replete with sexual references to young boys to determine that the defendant intended to elicit a sexual response in the viewer); *United States v. Steen,* 634 F.3d 822, 825 (5th Cir. 2011) (the same court relied on the lack of evidence on the defendant's computers relating to minors to determine that the images were not lascivious); *United States v. Miller*, 829 F.3d 519, 526 (7th Cir. 2016) ("Whether the image 'arouses sexual desire' is informed by the intent of the person creating the image."); *United States v. Larkin*, 629 F.3d 177 (relying on producer's having trafficked a photo at issue to a pedophile to determine that she "designed the image depicted ... to arouse"); *United States v. Russell*, 662 F.3d 831, 843 (7th Cir. 2011) (upholding the district court's allowance of the government to introduce evidence of

The internet history is also relevant to establish that his continued possession of those images was knowing.

###       iii.           The defendant's taking and saving photos of media images of young boys.

As summarized above, the forensic examination of the defendant's digital devices revealed numerous photos of young males, who appear similar in age to ███ and of ███ and ███ in Count Three.  The photographs were taken while watching tv, while shopping in stores, and while apparently just moving about in life.  Some of the images were taken while the defendant was shopping with ███████ and ██████  The taking and saving of these photographs is probative to the defendant's sexual attraction to young males, including those around the age of victims in this case.  Moreover, the disturbing way in which they were produced reflects an infatuation, bordering on obsession, with young boys.  This evidence demonstrates the defendant's sexual interest in young boys, and also his motive and intent to produce and save child pornography.  Additionally, the evidence rebuts the defendant's likely defenses that he did not take some of the photos, or that some of the photos were taken by accident or mistake, particularly Counts 2 and 3.

###       iv.           Under Rule 403, the probative value of the evidence substantially outweighs the risk of unfair prejudice.

Under a Rule 403 balancing assessment, the pieces of evidence described above each have a greater probative value that substantially outweighs any danger of unfair prejudice.  To avoid the

---

molestation to support the argument that the defendant intended to create sexually provocative photographs of his daughters); *but see United States v. Frabizio*, 459 F.3d 80, 89-90 (1st Cir. 2006) (rejecting a "four corners rule" for determining the lasciviousness of a depiction, and stating that "the text of the statute itself does not require" such a rule); *United States v. Amirault*, 173 F.3d 28, 31--32 (1st Cir. 1999) ("in determining whether there is an intent to elicit a sexual response, the focus should be on the objective criteria of the photograph's design.").

risk of unfair prejudice or cumulative evidence, the government is seeking to admit only a limited amount of the universe of potential exhibits and testimony that fits within the categories set forth in Rule 404(b), and that directly bear on the defendant's intent/ knowledge for the counts of the Second Superseding Indictment.  The probative value of the limited evidence set forth above is especially high in a case like this that involves enticement and sexual exploitation of a child, where the government must prove the defendant's specific intent to use a child for the purpose of producing depictions of sexually explicit conduct.

## CONCLUSION

For all of the foregoing reasons, the United States respectfully requests that this Court permit the admission of this evidence at trial.

Respectfully submitted,

Jonathan F. Lenzner
Acting United States Attorney

By: _____
Paul E. Budlow
Colleen E. McGuinn
Assistant United States Attorneys

40