UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>FERNANDO CRISTANCHO,<br><br>Defendant. | CASE NO:   ELH-18-098 |

**GOVERNMENT'S SUPPLEMENTAL MOTION TO ADMIT EVIDENCE PURSUANT TO RULES 414 AND 404(b)**

The United States hereby files a motion for a pretrial ruling regarding the admission of evidence at trial pursuant to Rules 414 and 404(b) of the Federal Rules of Evidence. This motion supplements the government's filing in Document 24 and Document 95 and provides notice of additional evidence that the government intends to introduce at trial.[1] The evidence should be admitted because it is relevant, and its admission will not unduly prejudice the defendant. It follows that this evidence is admissible under Federal Rules of Evidence 414 and 404 (b), along with the other evidence that the government has previously noted.[2]

**I.      DEFENDANT'S PRIOR CONDUCT – ▬▬▬▬ DEANE**

In late July 2021, the government became aware of another potential victim of child molestation at the hands of the defendant. On August 31, 2021, the victim, ▬▬▬▬▬▬, was interviewed via video. ▬▬▬▬ provided the following information:

- ▬▬▬▬ is currently 33 years old, married, and residing in St. Mary's County, Maryland. She grew up in/near Alexandria, Virginia, and attended Good Shepard

---

[1] The government recently identified to the defendant the additional evidence it is seeking to admit pursuant to 414 and provided copies of the relevant records in discovery.   The government learned of this evidence on August 31, 2021.

[2] This Court denied the defendant's motion to sever at a hearing on August 27, 2021, and effectively ruled that the evidence intrinsic to the charges is admissible at one trial.  The government will also argue at the hearing scheduled for September 21, 2021, to admit the remaining evidence previously described in Document 95

2

Catholic Church.[3]

- When ▮▮▮▮ was approximately 7 years old (around 1995) the defendant moved to Alexandria and began serving at her parish. He also started taking English lessons with her mom who was an ESL (English Second Language) teacher.

- ▮▮▮▮ was the youngest of 6 children and described herself as always "lost in the shuffle." The defendant was at her home often, and she described him as being her "best buddy," and believes he was aware of the lack of attention paid to her by her family.

- The abuse started with the defendant touching ▮▮▮▮ when they were on the couch in her home. At first it was snuggling and putting his arm around her when he would sit next to her. He then progressed to rubbing her nipples with his hand, over her clothes. The defendant also touched her vaginal area, at first over the clothes. The defendant later touched her vagina with his hands, under her clothes.

- ▮▮▮▮ twice told her mother that the defendant was touching her "where I'm not supposed to be touched", but without further elaboration. By her telling, she was approximately 8 or 9 years old and was perhaps not as specific as she could have been, and now realizes that she did not quite have a grasp on what was occurring.

- Her mother told her the defendant was just "touchy" due to cultural differences.

- Her mother said that she would talk to the defendant, but the abuse continued.

- The defendant continued to touch ▮▮▮▮, but now told her he would get in "huge" trouble if she told anyone, and bad things would happen to him. Afraid of what would happen to him, ▮▮▮▮ did not disclose again to her mother, or anyone, until years later after the abuse had progressed.

- In 1998, when ▮▮▮▮ was 10 years old, her family moved to Bel Air, Maryland.

- Although ▮▮▮▮ did not expect to see the defendant after the move to Maryland, the defendant did visit, and at some point, he moved to Bel Air. During this time the defendant began working at St. Ignatius church, and would visit ▮▮▮▮'s family regularly.[4] ▮▮▮▮'s family initially attended St. Ignatius, because that was her grandparents' parish, and because the defendant was employed as a priest there. Her family also attended the Spanish Masses at St. Frances De Sales in Abingdon when

---

[3] A revised timeline which includes the defendant's molestation of ▮▮▮▮ ▮▮▮▮ is attached to this filing as Exhibit A

[4] The Defendant began his employment at St. Ignatius Catholic Church in Hickory, Maryland, on or about March 1999. It should be noted that ▮▮▮▮, whose testimony is evidence the government is seeking to introduce in Document 98, met the defendant at this time. Tremblay's testimony of events is contemporaneous to ▮▮▮▮'s increased sexual abuse by the defendant. Both individuals were altar servers just like ▮▮, the subject of Count 1 of the indictment. Both individuals describe grooming behaviors identical to each other and to ▮▮.

3

defendant presided over services there. ▇▇▇▇ was an altar server for the defendant at St. Frances De Sales.

- In Maryland, the defendant's abuse of ▇▇▇▇ escalated. He began to actively touch her under the clothes. He would grab her hand and put it on his penis. He put his hands under her clothes and rubbed her labia/vaginal area, and later inserted his finger into her vagina. He also touched her vagina with his mouth and tongue.

- Often the abuse (in both Virginia and Maryland) occurred when they were alone in her room but sometimes it would occur around others, but subtle.

- The defendant often spoke to ▇▇▇▇ about her body, and at one point told her she had a "little penis" (she now believes he was referring to the clitoris), but at the time she did not understand what he meant.

- During the years of abuse, the defendant repeatedly told ▇▇▇▇ that he loved her or was in love with her.

- The defendant had a key to their home and could come and go as he wished. The defendant was sometimes alone in the house with ▇▇▇▇, due to her being last to leave in the morning, and first to come home in the afternoon/evening.

- The defendant would ask her to perform to put her mouth on his penis. She refused.

- When she was 12 years old, ▇▇▇▇ had a class about sex, and learned about how babies are conceived. She became concerned because the defendant would touch his own penis and then touch her vagina with his hand – and at the time she thought this could possibly lead to pregnancy. She was scared that she would become pregnant.

- On the last occasion of abuse the defendant was being more forceful about his request, and she used a ball and hit in his penis. This occurred around 2001 -2002.

- Following the last incident of abuse, ▇▇▇▇ disclosed to her mother, providing more details about the sexual abuse. This time, her mother confronted the defendant.

- The defendant told ▇▇▇▇ and her mother that if they did not forgive him, he would turn himself in to the police. ▇▇▇▇ remembers thinking this would be a good idea, but her mother said this would be bad timing for the Church.[5]

- Her mother and the defendant made ▇▇▇▇ have confession with the defendant, alone in ▇▇▇▇'s bedroom. During this confession, the defendant made ▇▇▇▇ think that she was partially to blame for what the sexual abuse.

---

[5] In early 2002, the *Boston Globe* circulated the result of their investigation into the Boston Diocese and what is known as the Catholic Archdiocese of Boston sex abuse scandal. This explosive investigation began the wave of investigations into the Roman Catholic Church at large.

4

As will be discussed below, the defendant's conduct towards ▓▓▓▓▓▓ meets the definition of child molestation and should be admitted under Rule 414.

II.     **THE LAW AND ITS APPLICATION**

   A.     **Federal Rule of Evidence 414**

Rule 414 provides that in a criminal case in which the defendant is accused of child molestation, evidence of the defendant's commission of another offense of child molestation is admissible and may be considered for its bearing on *any matter to which it is relevant*. Fed. R. Evid. 414(a) (emphasis added). Such evidence is not temporally limited to prior acts of a defendant, but instead encompasses all other acts, whether before, after, or contemporaneous with the charged conduct. *See United States v. Mohr*, 318 F.3d 613, 617 (4th Cir. 2003) (discussing Rule 404(b)); *see also United States v. Sioux*, 362 F.3d 1241, 1246–47 (9th Cir. 2004).

Rule 414 provides in pertinent part:

> In a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other child molestation. The evidence may be considered on any matter to which it is relevant.

*Id.* Child molestation is defined in the rule to include both state and federal crimes involving sexual abuse and exploitation of children.[6] Rule 414 defines "child molestation" broadly to include:

   (A)   Any conduct prohibited by 18 U.S.C. chapter 109A and committed with a child;

   (B)   Any conduct prohibited by 18 U.S.C. chapter 110;

   (C)   Contact between any part of the defendant's body—or an object—and a child's genitals or anus;

   (D)   Contact between the defendant's genitals or anus and any part of a child's body;

---

[6] Rule 414 defines a "child" as a person under the age of 14. Thus, the admissibility of the defendant's conduct towards ▓▓▓▓ (starting at age 7 and continuing to age 12) should be considered under Rule 414.

5

  (E)  Deriving sexual pleasure or gratification from inflicting death, bodily injury, or physical pain on a child; or

  (F)  An attempt or conspiracy to engage in conduct described in subparagraphs (A)-(E).

Fed. R. Evid. 414(d).

Rule 414 "create[s] an exception to the general ban on propensity evidence contained in Rule 404(b)." *United States v. Seymour*, 468 F.3d 378, 385 (6th Cir. 2006); *United States v. Kelly*, 510 F.3d 433, 436-37 (4th Cir. 2007) (Rule 414 "is an exception to the general rule that evidence of past crimes may not be used 'to prove the character of a person in order to show action in conformity therewith.'"); *United States v. Jones*, 748 F.3d 64, 70 (1st Cir. 2014) ("Rule 414 removes Rule 404(b)'s blanket ban on propensity inferences in child-molestation chases.").

 **B. Applying the *Stamper* elements**

In *United States v. Stamper*, the court laid out three elements required for evidence to be admissible under Rule 414:

  (1) the defendant must be accused of an offense of child molestation;

  (2) the evidence proffered must pertain to the defendant's commission of another child molestation; and

  (3) the evidence must be relevant.

*United States v. Stamper*, 106 F. App'x 833, 835 (4th Cir. 2004) (unpublished).

The evidence the government seeks to admit through the testimony of ▮▮▮▮▮▮ meets these elements. The defendant is charged with offenses of child molestation[7] across all eleven counts of the indictment. The evidence proffered does pertain to another child molestation; and finally, the evidence is relevant.

---

[7] During the hearing on the defendant's motion to sever counts, this Honorable Court ruled on the record that the eleven counts of the indictment do meet the definition of child molestation under Rule 414, and so the government will not include an analysis of the charged counts here.

The abuse described by ▓▓▓▓ fits squarely into the definitions of child molestation. She describes sexual abuse of a minor[8] including grooming behaviors, sexual contact, and eventually sexual acts. She specifically describes that the defendant touched her genitals with his hand, including digital penetration, as well as his mouth.[9] She also stated that the defendant would grab her hand and force her to touch his penis.[10]

Lastly, the proffered evidence of ▓▓▓▓ is relevant. At trial, the government will be required to prove that the defendant knowingly engaged in unlawful sexual activity with a minor (Count One), that the defendant knowingly used a minor to engage in sexually explicit conduct *for the purpose of producing a visual depiction of such conduct* (including that when the defendant took the photos, he "intended to elicit a sexual response") (Counts Two – Seven), and that he knowingly possessed child pornography (Counts Eight – Eleven). ▓▓▓▓'s testimony is relevant to show that the defendant has a sexual interest in minors,[11] to show that he had the purpose of producing child pornography to elicit a sexual response, to show that his continued possession of those images was knowing, to negate any defenses raised by the defendant that the pictures were not taken by the defendant, and alternatively that the pictures were not taken with any sexual intent.

The proffered evidence therefore meets all the requirements of Rule 414.

### C. Applying the Balancing Test of Rue 403

---

[8] Fed. R. Evid. 414(d) (A) Any conduct prohibited by 18 U.S.C. chapter 109A and committed with a child.

[9] Fed. R. Evid 414 (d) (C) Contact between any part of the defendant's body—or an object—and a child's genitals or anus.

[10] Fed. R. Evid 414 (d)(D) Contact between the defendant's genitals or anus and any part of a child's body.

[11] The Fourth Circuit has held that prior sexual abuse "is highly probative because it tends to prove a "sexual attraction towards children." *United States v. Rice*, 347 F. App'x 904, 906 (4th Cir. 2009); *United States v. Kelly*, 510 F.3d 433, 438 (4th Cir. 2007).

While this evidence meets the requirements of Rule 414, it is still subject to the balancing test of Rule 403.  *United States v. Kelly*, 510 F.3d 433, 437 (4th Cir. 2007).  While evidence of prior sexual acts will always be "emotionally charged and inflammatory," courts must keep in mind that the allegation that the defendant committed the charged crimes will be just as inflammatory.  *LeMay*, 260 F.3d at 1030.

The Fourth Circuit instructs district courts to consider several factors when subjecting Rule 414 evidence to the Rule 403 balancing test, including:

(1) The similarity between the previous offense and the charged crime;
(2) The temporal proximity between the two crimes;
(3) The frequency of the prior acts;
(4) The presence or absence of any intervening acts; and
(5) The reliability of the evidence of the past offense.

*Kelly*, 510 F.3d at 437.  Applying the factors laid out by the court in *Kelly*, the evidence offered by ▮ passes the Rule 403 balancing test.

### i. The defendant's conduct is similar.

First, the similarity between the offenses is clear – all involve the sexual exploitation of minors.[12]  The similarity between ▮'s abuse at the hands of the defendant is nearly identical and highly similar to Count One involving ▮.  Both ▮ and ▮ describe grooming behaviors; the close almost familial relationship they shared with the defendant; the experience of being an altar server; how the defendant would express that he was in love with each victim, almost like a romantic relationship; and even having to endure the Sacrament of Confession with their very abuser, who utilized aspects of their shared Catholic faith to normalize the behaviors.

Although the similarity between the exploitation of ▮ and that of Counts Two –

---

[12] The cases cited in the government's response to the motion to sever are also instructive here – as each found that these offenses here were "similar in character."

Eleven is apparent because all involved the defendant personally exploiting minors, courts have also universally found sufficient similarity between sexual abuse of a child and child pornography offenses.[13]

In *United States v. Stroming*, 838 Fed.Appx. 624 (2021), the Second Circuit held that the fact that the charged conduct involved a toddler male, and the prior convictions involved a criminal sexual act against a teenaged female did not affect the analysis, rejecting the defendant's "hairsplitting arguments." *Id* at 626. Thus, the defendant's sexual molestation of ▓▓▓▓ is similar to the conduct charged in *all* counts of the indictment. The gender, age, and mechanism of abuse are not factors to be considered in terms of "similarity." The similarity rests solely on that all of the evidence involves the molestation of children.

      ii.     **The defendant's conduct is sufficiently close in time.**

The conduct charged in Count One and Counts Two - Eleven in the indictment has already been found to be sufficiently close in time to each other.[14]

The analysis needed here for ▓▓▓▓'s testimony does not require a broad view of the temporal component. In fact, ▓▓▓▓'s timeline of abuse begins eight years before and continues through and is contemporaneous with the beginning of the abuse described by ▓▓▓. The defendant's abuse of ▓▓▓▓ stopped around 2001-2002, and the defendant's abuse of ▓▓▓ *began* in 2002.

Thus, the defendant's conduct towards ▓▓▓▓ and the conduct charged in the Second Superseding Indictment is well within the timeframe of Rule 414's temporal requirement.

      iii.    **The defendant's conduct was frequent.**

---

[13] The government incorporates by reference cases cited in Document 95 on this issue.

[14] At the hearing on the defendant's motion to sever counts, this Honorable Court found that the time elapsed between Count One and Counts Two – Eleven was not significant considering *Kelly* (20 years) and similar cases

As the facts demonstrate, the defendant has a long-standing sexual interest in children that continued from 1995 through his arrest in 2017. The defendant's conduct includes grooming and sexually abusing young children from approximately 1995-2004, producing images of his minor children in 2012, 2015, 2016, and 2017, and searching the internet and visiting websites looking for pornography of boys from 2014 to 2017.

### iv. There have been no intervening circumstances.

There have also been no relevant intervening circumstances. Thus, this factor also weighs in favor of admitting evidence of the defendant's conduct relating to child molestation, since no intervening facts between the charged conduct occurred to lessen the probative value or increase the prejudicial effect of the uncharged conduct. Instead, the facts detailed above show that the defendant has consistently engaged in conduct demonstrating his sexual attraction to minors.

### v. The evidence is reliable.

Finally, the evidence is reliable. ▇▇▇▇ will describe a series of events consistent with the events of this charged case including: when the defendant was assigned to Good Shepard Parish in Virginia; his ingratiating behavior towards families in the parishes where he worked; his identical grooming behaviors and use of religious tenants to gain access and "trust" of his victims; when the defendant moved to Bel Air, Maryland; and even why her own abuse was not reported to the authorities by her mother. It should be noted that at the time ▇▇▇▇ was interviewed, she had no knowledge of the specific charges in this indictment, of the victims involved, and she was certainly unaware of the specific similar details and statements made by ▇▇.

▇▇▇▇ will testify under oath, subject to cross-examination, regarding her interactions with the defendant. ▇▇▇▇ has no interest in the proceedings, and there is nothing to question her credibility in any way. Investigators, upon learning of her existence as a potential victim,

contacted her and sought out her testimony and cooperation. At no point has ▇▇▇ shown any motive or bias as an uncharged victim.

▇▇▇'s testimony is admissible irrespective of her not being the subject of a count in the Second Superseding Indictment. Courts have admitted evidence where the victim of the charged offense and the victim in the evidence admitted are different. In *Reigle*, the Fourth Circuit held that Judge Garbis did not err in admitting evidence under 404(b) of the defendant's molestation of children who were not the victim subjects in the child pornography produced by the defendant. *United States v. Reigle*, 228 F. App'x 353, 356 (4th Cir. 2007). In *United States v. Foley*, 740 F.3d 1079, the Seventh Circuit affirmed the district court's admission of evidence under Rule 413 of a minor male's testimony (different from the minor victim in the charged offense) that several years earlier the defendant had sexually molested him. 740 F.3d 1079, 1087-88 (7th Cir. 2014) ("Under Rule 414, Minor Male B's testimony about his past molestation was admissible to prove Foley's propensity to produce and possess child pornography under federal law.")

When viewing all these factors together, it is clear that the evidence of the defendant's acts of child molestation against ▇▇▇ passes the balancing test of Rule 403. Because Rule 414 is a rule of inclusion, the law requires exclusion of relevant evidence only when the probative value of evidence is substantially outweighed by the danger of unfair prejudice. *Kelly*, 510 F.3d at 437. Evaluation of the evidence of the defendant's prior child molestation conduct against ▇▇▇ weighs in favor of admitting the evidence at trial.

Additionally, if there is any prejudicial effect of admitting this evidence, it is the same as the probative value of the evidence – it tends to prove that the defendant has a sexual attraction towards children. *See Kelly*, 510 F.3d at 438; *Rice*, 347 F. App'x at 906. Therefore, the evidence

11

is clearly not *unfairly* prejudicial and is admissible under Rules 414 and 403.[15]

### III. SUMMARY

The defendant's conduct towards ▮▮▮▮, viewed in its entirety, is evidence of the defendant's sexual molestation of a minor, and falls within the purview of Rule 414. For the same reasons that the evidence of the defendant's abuse of ▮▮ in Count One has been joined with the remaining counts and is otherwise admissible in a trial of those counts, his conduct towards ▮▮▮▮ is also admissible.

Thus, the three elements of 414 are met: the defendant is charged with child molestation, the evidence of the defendant's conduct towards ▮▮▮▮ constitutes attempted child molestation, and the evidence is probative to numerous critical aspects of the charges, most notably the defendant's sexual interest in minors. Additionally, for the same reasons addressed above, the factors of Rule 414's 403 analysis are met (similarity, temporal proximity, frequency, lack of intervening circumstances, and reliability).

Under a Rule 403 balancing assessment, the evidence provided by ▮▮▮▮ has a greater probative value that substantially outweighs any danger of unfair prejudice. The probative value of the evidence set forth above is especially high in a case like this that involves enticement and sexual exploitation of a child, where the government must prove the defendant's specific intent to use a child for the purpose of producing depictions of sexually explicit conduct as well as his sexual attraction to children.

Under Rule 404(b), the evidence provided by ▮▮▮▮ falls squarely into the admissibility for motive, identity, absence of mistake, intent, and common scheme or plan. Applying the

---

[15] The court in *Stamper* suggested that in child molestation cases, Rule 414 replaces Rule 404(b) for admissibility of prior bad acts involving child molestation. *Stamper*, 106 Fed. App'x at 835 (citing *United States v. Castillo*, 140 F.3d 874, 879 (10th Cir. 1998)).

balancing test under this rule, the evidence has a greater probative value that substantially outweighs any danger of unfair prejudice.

## CONCLUSION

For all of the foregoing reasons, the United States respectfully requests that this Court permit the admission of this evidence at trial.

Respectfully submitted,

Jonathan F. Lenzner
Acting United States Attorney

By: _____
Paul E. Budlow
Assistant United States Attorney

_____
Colleen Elizabeth McGuinn
Assistant United States Attorney